IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS   DIVISION

| | | |
|---|---|---|
| TEXAS CLINICAL LABS, INC., et al | ) | |
| | ) | |
| v. | ) | **3-06-CV-1861-AH** |
| | ) | |
| MIKE LEAVITT, SECRETARY OF | ) | |
| DEPARTMENT OF HEALTH AND | ) | |
| HUMAN SERVICES | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pursuant to the written consents of the parties and the District Court's order of transfer filed on March 2, 2007, came on to be considered Defendant Mike Leavitt's motion to dismiss filed on April 10, 2006 (Doc. 35), Defendant Leavitt's motion to dismiss filed on February 2, 2007 (Doc. 53), and Plaintiffs' motion for leave to substitute, correction caption, etc. filed on March 5, 2007 (Doc. 60), and having considered all relevant pleadings the court finds and orders as follows:

<u>**Facts**</u>: Due to the lengthy and protracted dispute with regard to what payments are due for services rendered by Medicare Part B providers it is appropriate to set out some of the background and history involved.  Texas Clinical Labs, Inc. and Texas Clinical Labs - Gulf Division, Inc. were corporations organized under the laws of the State of Texas.  Daniel P. Campbell was the sole owner of the shares of stock in each corporation.  From January 1987 through December 31, 1990**,** the corporations provided clinical laboratory testing services in the State of Texas to Medicare Part B beneficiaries.  <u>See</u> TR at 103.

Requests for reimbursements for services rendered were initially presented to a private insurance company designated to review such claims.[1]   In this instance the carrier was Blue

---

[1]The procedures which a Medicare Part B provider was to follow in seeking reimbursement are set out in some detail in Defendant's April 10, 2006, motion at Part II A.-C., at 3-9.

Cross/Blue Shield of Texas.  An issue arose over the manner in which the carrier calculated travel allowances based upon a 35 mile per hour component.

After further appeals to the carrier to cease using the 35 m.p.h. factor proved unavailing, the Texas corporations, joined by Colorado Clinical Labs, Inc., a Colorado corporation, filed suit against the Secretary of Department of Health and Human Services and Blue Cross/Blue Shield of Texas in the United States District Court for the District of Colorado.  On July 13, 1989, the court transferred the case to the Northern District of Texas.  See Colorado Clinical Labs, Inc., et al v. Sullivan, et al, 715 F.Supp. 985 (D.C. Colo. 1989).  Upon transfer to this court, Plaintiffs' claims were dismissed without prejudice for failure to exhaust administrative remedies.  Colorado Clinical Labs, Inc., et al v. Newman, et al, No. CA3-89-1834-D, 1990 W.L. 282590 (N.D. Tex. May 24, 1990). The court's order sets out the administrative steps required and the conduct of the Texas corporations in seeking revisions to the formula used by Blue Cross-Blue Shield.

The Texas corporations then pursued their administrative remedies and following exhaustion of the same they filed a second action in the Northern District of Texas in 1996.  The District Court granted the Secretary's motion for summary judgment.  See Texas Clinical Labs, Inc., et al v. Shalala, 1999 W.L. 1243200 (N.D. Tex. December 21, 1999).

In the interim between the filing of the initial federal court action and the date on which the second action was filed Texas Clinical Labs, Inc.'s corporate charter was forfeited on November 18, 1991, for failure to pay its franchise taxes.  Texas Clinical Labs - Gulf Division, Inc.'s was involuntarily dissolved on July 27 1988, but was reincorporated in the State of Texas on September 17, 1990.  Thereafter its corporate charter was  forfeited on February 13, 1996, for failure to pay its franchise taxes.

2

The corporations appealed the District Court's adverse judgment.  On a date prior to August 9, 2000, Daniel P. Campbell died in Denver, Colorado.  On December 22, 2000, the Fifth Circuit affirmed in part and reversed in part the district court's judgment in an unpublished opinion.  Texas Clinical Labs, Inc., et al v. Apfel, No. 00-10099, 2000 W.L. 34507667 (5th Cir. 2000).  Specifically the court remanded the case to the Secretary for an opportunity to include in the administrative record those documents to support the decision using the 35 mile per hour figure.[2]

Subsequent to the entry of the Fifth Circuit's judgment, the claims were referred to Administrative Law Judge C. F. Moore for further review.  On March 25, 2003, the ALJ ruled in favor of the Texas corporations, finding that reimbursements for travel allowance should be determined using a 20 mile per hour figure with accrued interest.  TR 78-88, at 88.   No appeal was taken from the ALJ's decision.

By letter dated August 19, 2004, the Texas corporations challenged the ALJ's determination of accrued interest and requested him to recalculate the interest owed.  On September 20, 2004, the ALJ issued an opinion and order in which he determined he was without jurisdiction to supplement his March 25, 2003, decision.  TR 33-36.  On October 12, 2004, the Texas corporations requested a review of this determination (TR. 24-28) and on August 22, 2005, the Medicare Appeals Council (MAC) issued its decision which found that the ALJ did  have jurisdiction to determine the amount of interest which accrued with respect to a reimbursement decision, but further found that no sum in excess of that awarded based upon the March 25, 2003, decision was due.  TR 3-14

On October 26, 2005, a suit for judicial review of the MAC decision of August 22, 2005, was

_____

[2]It does not appear that the forfeiture of the Texas corporations charters was ever raised as an issue in the district court or in the Fifth Circuit or that the Fifth Circuit was apprised of Mr. Campbell's death after entry of the district court's judgment and prior to its judgment.

filed in the United States District Court for the District of Colorado at Denver naming the Texas corporate entities and the Estate of Daniel P. Campbell as plaintiffs.  Thereafter an amended complaint was filed on March 17, 2006, in which Texas Clinical Labs, LLC and Texas Clinical Labs - Gulf Division, LLC - Colorado limited liability companies - were added as additional plaintiffs.

Defendant Leavitt moves to dismiss each of the named plaintiffs in Plaintiffs' amended complaint filed on March 17, 2006, and Plaintiffs seek leave to amend to name Richard O. Campbell as a party in his capacity as representative of the Estate of Daniel P. Campbell.  Defendant's April 10, 2006, motion was fully briefed by the parties in Colorado prior to transfer of this case to the Northern District of Texas. In his order of transfer entered on September 29, 2006, District Judge Phillip S. Figa denied as moot Defendant Leavitt's motions to dismiss filed on February 2 and 3, 2006, granted Defendant's motion to transfer, but declined to rule on the remaining grounds for dismissal, leaving the same to be decided by this court.

The court now addresses Defendant's motions as they relate to the parties named in Plaintiff's amended complaint.

1.  Texas Clinical Labs, LLC and Texas Clinical Labs - Gulf Division, LLC - the Colorado limited liability companies.

At no time prior to the date on which  the Texas corporations filed their appeal to the MAC following the supplemental decision of the ALJ on September 20, 2004, did these Colorado companies join themselves as parties to the appeal, which the Texas corporations initiated by letter dated August 19, 2004, nor did the Colorado companies provide any information in August 2004 that the Texas corporations had assigned to them any interest in the remaining dispute.  As such, they lack standing to seek judicial relief since only those persons who are actual parties to the

4

administrative review process may bring an action for judicial review of the final administrative decision pursuant to 42 U.S.C. §§ 405(g) and 1395ff(b).

Further, any purported assignment of any claims of the Texas corporations to the Colorado companies does not comply with the requirements of 31 U.S.C. § 3727(b).  At the time ALJ Moore issued his favorable decision on the Texas corporations' behalf on March 25, 2003, neither Colorado limited liability company existed under § 7-80-203, Colorado Revised Statutes and the charters of the Texas corporations had long since been forfeited.

Finally, it is clear from the registration documents for the Colorado companies that their sole member was the "Estate of Daniel P. Campbell."[3]

2.  Texas Clinical Labs, Inc. and Texas Clinical Labs - Gulf Division, Inc. - the Texas corporations.

The rights of a corporation are determined by the laws of the state of incorporation. Therefore, the court applies Texas law in determining whether either Texas corporation can bring a judicial action.  A corporation that fails to pay its franchise taxes forfeits its right to sue.  See Texas Tax Code Ann. §§ 171. 251-252; Dunagan v. Bushey, 263 S.W.2d 148, 152 (1953); M&M Construction Co., Inc. v. Great American Ins. Co., 747 S.W.2d 552, 554 (Tex.App. - Corpus Christi 1988, no writ); Hardwick v. Austin Gallery of Oriental Rugs, Inc., 779 S.W.2d 438, 441 (Tex.App. - Austin 1989, writ denied).

---

[3]In the first case which involved the Medicare Part B claims of Texas Clinical Labs, Inc. and Texas Clinical Labs - Gulf Division, Inc., a Colorado corporation, Colorado Clinical Labs, Inc., was joined as a plaintiff.  In addressing the inclusion of the Colorado entity, the court observed that: "It appears that Colorado Clinical was included as a plaintiff ... as part of an attempt to lay venue in the district.  I do not look favorably on such tactics." See Colorado Clinical Labs, Inc. v. Sullivan, supra, 715 F.Supp. at 987.

Although the dates on which the Texas corporations ceased doing business are unclear, it is undisputed that Texas TCL failed to pay its required franchise taxes no later than November 18, 1991, and that Texas TCL - Gulf Division was involuntarily dissolved in July 1998 and following its reincorporation in September 1990 it failed to pay its franchise taxes no later than February 13, 1996.[4]  Therefore, neither Texas corporation has the capacity to sue Defendant for relief pursuant to 42 U.S.C. § 405(g).  Both capacity to sue and a party's standing must be present to permit recovery on a stated cause of action.  See e.g. El T. Mexican Restaurants, Inc. v. Bacon, 921 S.W.2d 247, 249-50 (Tex.App. - Houston [1st Dist.] 1995, writ denied).  See also Rule 17(b), F.R. Civ.P.

3.  The Estate of Daniel P. Campbell and Richard O. Campbell as the personal representative of Daniel P. Campbell.

In both the original complaint filed on October 26, 2005, and in the amended complaint filed on March 17, 2006, the Estate of Daniel P. Campbell is named as a plaintiff.  It is universally recognized that the estate of a deceased person is not a legal entity which may sue or be sued.  See Henson v. Estate of Crow, 734 S.W.2d 648, 649 (Tex. 1987); Henshel v. Wagner, 215 P. 476, 477 (Colo. 1923); Defelice v. Johnson, 931 P.2d 548 (Colo. App. 1996).

In light of this fact Plaintiffs seek to substitute the legal representative of Daniel Campbell's estate, Richard O. Campbell, as the real party in interest, See Plaintiffs' brief in opposition   to Defendant's motion to dismiss (Doc. 61) at 12-13 and or for leave to amend the complaint again to identify Richard O. Campbell as the estate's representative.  See Plaintiff's motion to amend/correct, etc. (Doc. 60).

---

[4]In their response to Defendant's motion (Doc. 39) Plaintiffs concede that the Texas TCLs are now defunct or dissolved.  Id. at 19.

Plaintiffs are in error to the extent that they seek to equate the Estate of Daniel Campbell as a beneficiary of Medicare Part B reimbursements owed to the Texas corporations. See Plaintiffs' reply (Doc. 65) at 2-3. Although Daniel Campbell was the sole shareholder in the Texas corporations, it was the corporations which provided the services which were reimbursable under Medicare Part B, but they, for the reasons set out above, lack the capacity to bring an action for judicial review under §§ 405(g) and 1395 ff(b).

When a Texas corporation has forfeited its privileges to bring a judicial action, the stockholders may prosecute such actions in the courts as may be necessary to protect their property rights. Dunagan v. Bushey, 263 S.W.2d 148, 152 (Tex. 1953), citing Humble Oil & Refining Co. v. Blankenship, 235 S.W.2d 89l, 894 (1951)). When a corporation no longer has capacity to sue, the title to its assets are bifurcated with legal title remaining in the corporation, but with beneficial title in its shareholders. El T. Mexican Restaurants, Inc. v. Bacon, supra, 921 S.W.2d at 251-52.

The capacity in which a single shareholder or group of shareholders may bring an action on behalf of an incapacitated Texas corporation is also informed by Texas state law. A shareholder may bring an action for damages alleged to have been sustained by the corporation which lacks the capacity to sue due to its failure to pay franchise taxes, but only on behalf of the corporation and not in the shareholder's individual capacity. See e.g. Wingate v. Hajdik, 795 S.W.2d 717, 719 (Tex. 1990); El T. Mexican Restaurants, Inc. v. Bacon, supra, 921 S.W.2d at 251. This rule of law applies even when the individual is the sole shareholder in the legally barred corporation. Id.

Daniel Campbell during his lifetime or another on behalf of the Texas corporations following his death could have reinstated them by fulfilling their obligations imposed under the Texas Business Corporation Act, thereby restoring their capacities to bring a judicial action, see e.g. Hinkle

v. Adams, 74 S.W.3d 189, 193-94 (Tex.App. - Texarkana, 2003, no writ).  However, neither prior to filing their second action in this district in 1996, nor at any time subsequent thereto have the delinquencies been rectified, thereby reinstating their capacities to sue.[5]  Under the circumstances presented even had Daniel Campbell been alive at the time of the MAP's decision  was rendered, he could not have brought suit for judicial relief in his individual capacity. It necessarily follows that the representative of his estate likewise is not permitted to seek relief in this court.

For the foregoing reasons it is **ORDERED** that Defendant Leavitt's motions to dismiss are granted and that Plaintiffs' Motion for Leave to Substitute, Correct Caption, etc. is **DENIED**.[6]

---

[5]The court expresses no opinion as to whether an incapacitated corporation can pursue administrative remedies as a provider under Medicare Part B, particularly in light of the fact that the amounts consistent with ALJ Moore's decision on March 25, 2003,  have been paid in full.

[6]Because none of the named Plaintiffs have the standing and capacity to pursue the relief sought, their Bivens claim is likewise subject to dismissal.  The consent jurisdiction of a magistrate judge is not obviated by the absence of the consents of unserved parties over whom the court has no personal jurisdiction.  Neals v. Norwood, 59 F.3d 530-532 (5th Cir. 1995).

However, it is clear that the Bivens claims against unnamed employees first asserted in their amended complaint filed on March 17, 2006, is subject to dismissal under Rule 4(m), given that no attempt has been made to determine their identities such as Freedom of Information Act (FOIA) requests.   Further, notwithstanding the requirements of Rule 4, the amended complaint fails to state a cognizable claim.  Although Plaintiffs and the court question the Secretary's authority to seek relief on behalf of the unserved defendants, See Plaintiffs' response (Doc. 39), at 20, n. 4, the court has an independent obligation to determine  its jurisdiction over claims asserted in a complaint.

Plaintiffs' amended complaint alleges that the unnamed employees of the Department of Health and Human Services "flagrantly misrepresent[ed] to the Plaintiffs and the reviewing Courts that [the mileage -per-hour component of the travel allowance fee] was supported by objective evidence."  Plaintiffs' Amended Complaint at ¶ 46, page 12.  It is well-settled that only intentional and deliberate conduct is cognizable in an action based upon a constitutional duty and that a claim of negligence does not suffice.  See e.g. Daniels v. Williams, 474 U.S. 327, 328-31, 106 S.Ct. 662, 663-64 (1986).

In addition in determining whether an action against an individual defendant states a claim, a court must determine first, whether the individual intentionally and deliberately violated a constitutional obligation - which for the reasons stated above is lacking in the amended complaint - and second, whether such obligation was clearly established at the time the actor

A copy of this memorandum opinion and order shall be transmitted to counsel for the parties.

SIGNED this 24th day of May, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

---

omission occurred.  See Siegert v. Gillley, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793 (1991).
Plaintiffs have cited no case authority or otherwise which recognizes a cause of action against an
agency employee for deliberate and intentional conduct in which the employee engaged in the
course of the employee's duties.