IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS CLINICAL LABS, INC., *et al* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No.  3:06-CV-1861-AH |
| | § | **ECF** |
| CHARLES E.. JOHNSON¹, | § | |
| Acting Secretary | § | |
| of Health and Human Services, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the written consents of the parties and the District Court's order filed on March 2, 2007, the above styled and numbered action was transferred to the undersigned magistrate judge pursuant to the provisions of 28 U.S.C. § 636 (c).  Previously judgment was entered in favor of the Secretary of the Department of Health and Human Services, dismissing Plaintiffs' case with prejudice.  The Plaintiffs appealed the adverse judgment and on July 15, 2008, the Fifth Circuit affirmed the judgment in part and reversed it in part and remanded the case to the district court for further proceedings.  *See Texas Clinical Labs, Inc., et al v. Leavitt,* 535 F.3d 397 (5th Cir. 2008).

Following remand each side has filed a motion for summary judgment.  *See* Plaintiffs' Motion for Summary Judgment Re: Interest filed on September 26, 2008, and Defendant's Response and Counter-motion for Summary Judgment Re: Interest filed on November 5, 2008. Having reviewed and considered the said motions, responses and replies together with the parties' briefs and appendices, the court finds and orders as follows:

**Statement of the Case:** The operative facts in this case are undisputed.  Plaintiffs

---

¹Johnson is properly substituted for Michael Levitt, the former Secretary of the DHHS. *See* Rule 25(d), Federal Rules of Civil Procedure.

(hereinafter sometimes referred to as the Texas Clinical Laboratories or the "Texas TCL's") provided clinical laboratory services to long-term care facilities under the Medicare program. A private insurance carrier administered the Medicare program on behalf of the United States Department of Health and Human Services (the "DHHS"). In this case the administrator for the State of Texas was Blue Cross/Blue Shield of Texas.

In administering the Medicare program Blue Cross/Blue Shield implemented a new formula for calculating travel allowances to Texas healthcare providers such as Plaintiffs based on an average speed of 35 miles per hour (m.p.h.). Plaintiffs objected to this 35 m.p.h. assumption claiming that it was far in excess of the average speed which healthcare technicians were able to maintain as well as to the carrier's median cost per specimen calculation. They pursued an administrative review which culminated in a decision issued by an administrative law judge (ALJ) on January 31, 1992, which found *inter alia* that the 35 m.p.h. component of the travel allowance formula was not supported by the record and ordered the DHHS to recalculate the amount owed to Plaintiffs. OAR 381-395.[2] However, the Office of Hearings and Appeals Council vacated the ALJ's decision and remanded the claim for further proceedings including a new decision. OAR 421-424.

Upon remand the same ALJ, Oscar Galvin, issued a new decision on February 19, 1993, in favor of the Plaintiffs which again found that the 35 m.p.h. speed used was unsupported and appeared to have been arbitrarily selected. As a consequence, he found that the travel allowance reimbursements were not correctly computed. OAR 486-496. As with his prior decision the ALJ

---

[2]The "OAR" is the original administrative record filed in conjunction with No. 3-96-CV-571-L, *infra.  See* order entered on October 16, 2008 (Doc. 89) supplementing the record. "AR" refers to the administrative record transmitted on appeal from this court's prior judgment of June 15, 2007.

calculated the amount that the DHHS had underpaid the Medicare providers.

For a second time on July 15, 1993, the Appeals Council remanded the case. On June 28, 1995, a second ALJ, James A. Park, rendered a decision which addressed the cost per specimen issue and again ruled in the Medicare providers' favor on the speed component. OAR 58-77. On its own motion the Appeals Council decided to review the decision. After notifying Plaintiffs' attorneys of the reasons for its review, the Appeals Council issued its decision on August 30, 1996, which in pertinent part found that the travel allowance rates used by the carrier, Blue Cross/Blue Shield of Texas, were valid and therefore the Texas TCL's were not entitled to any additional payments. OAR9-29.

Plaintiffs filed an action in this court on February 28, 1996, seeking judicial review of the Appeals Council's adverse decision. *Texas Clinical Labs, Inc., et al v. Shalala*, No. 3-96-CV-571-L.[3] On December 21, 1999, the District Court granted the Secretary's motion for summary judgment and dismissed the case with prejudice. 1999 WL 1243200. On appeal the Fifth Circuit affirmed the district court on the median cost per specimen element, but remanded the 35 m.p.h. component issue back to the district court. *Texas Clinical Labs, Inc. v. Apfel,* No. 00-10099, 2000 WL 34507667 (5th Cir. decided December 22, 2000). The District Court in turn remanded the case to the Secretary directing that the administrative record be supplemented with documentation on which the DHHS relied to determine the 35 m.p.h. component. The Medicare Appeals Council (the "MAC") vacated that portion of the Appeals Council's prior decision of August 30, 1996, dealing with the insurance carrier's adoption of the 35 m.p.h. component and remanded the issue to an ALJ

---

[3]Plaintiffs filed a previous action in March 1989 contesting the rejection of their request for an adjustment of the speed component. After it was transferred from the District Court of Colorado to this court, the same was dismissed for failure to exhaust administrative remedies. *See Colorado Clinical Labs, Inc. v. Newman,* No. 3-89-1834-D (N.D. Tex.).

to obtain from the *carrier* any additional documentation and explanation it might have; to offer the Medicare provider a supplemental hearing and to issue a new decision on the miles per hour issue. AR 98-99. On March 25, 2003, ALJ C. F. Moore issued a decision in which he found that the carrier's use of 35 miles per hour as an average speed in the formula was not supported by the evidence, that the evidence supported Texas TCL's position that 20 miles per hour was the appropriate figure, and that the Medicare providers were entitled to $581,157.00 plus accrued interest. AR 81-88, at 88.[4] No appeal was taken from the decision. Two checks in the total amount of $622,261.75 representing the recalculated amount owed plus accrued interest, were issued and tendered on October 30, 2003. The Texas TCL's did not believe that the date from which the interest commenced to accrue was correctly determined so they requested ALJ Moore to issue a supplemental decision specifying the amount of interest owed under the March 25, 2003, decision. AR 41-48. On September 20, 2004, the ALJ denied the request upon his conclusion that he lacked jurisdiction. AR 33-36. On October 12, 2004, the Texas TCL's requested a review of this decision (AR 24-28) and on August 22, 2005, the MAC issued its decision which found that the ALJ did have jurisdiction to determine the interest accrual issue, but that the amounts represented by the checks issued on October 30, 2003, were all to which the Medicare providers were entitled. AR 03-14, at 08.

On October 26, 2005, an action was filed in the United States District Court for the District of Colorado seeking judicial review of the MAC's August 22, 2005, decision. Initially the Texas TCL's and the Estate of Daniel P. Campbell were named as plaintiffs. In an amended complaint filed on March 17, 2006, Texas Clinical Labs, LLC and Texas Clinical Labs - Gulf Division LLC-

---

[4]The evidence submitted by the carrier was designated as Exhibit 78. AR at 82; 150-162.

4

Colorado limited liability companies - were added as additional plaintiffs. The Secretary of the DHHS filed motions to dismiss and a motion to transfer. The Colorado District Court found certain of Defendant's motions to be moot, declined to rule on others and granted the Secretary's motion to transfer which resulted in the Plaintiffs' amended complaint being filed in this court in the above docketed action.

On May 24, 2007, this court granted the Secretary's motions to dismiss (Doc. 35 and 53) and denied Plaintiffs' motion for leave to substitute, etc. On June 15, 2007, judgment was entered dismissing Plaintiffs' action with prejudice (Doc. 69).

Plaintiffs appealed the court's adverse judgment and on July 15, 2008, the Fifth Circuit issued an opinion affirming the district court's judgment in part and reversing the judgment in part and remanding the case for further proceedings. *Texas Clinical Labs, Inc., et al v. Leavitt,* 535 F.3d 397 (5th Cir. 2008).

**Findings and Conclusions**: The court now addresses the issues asserted in the parties' respective motions for summary judgment. Issue is joined on whether sovereign immunity limits the accrued interest to that which has already been tendered and in the alternative whether the Secretary's interpretation of 42 U.S.C. §1395*l* should be followed in deciding that which constitutes a "final determination" which authorizes the accrual of interest.[5]

---

[5] Although this court previously dismissed this case on Defendant's motion and prior to an answer being filed by the Secretary of Health and Human Services on the basis that none of the named Plaintiffs had standing or capacity to sue, in the Fifth Circuit's decision, reversing in part and affirming in part the judgment, the Court also addressed the Plaintiffs' claim for additional interest, 535 F.3d at 407, but remanded this issue to the district court for determination.

Given the narrow basis on which I previously dismissed this action I conclude that the Court's observations with regard to additional interest are *dicta*, confident that if I am in error the same will be corrected on appeal. The Plaintiffs have included as an exhibit to their motion for summary judgment a transcript of the oral argument before the Court on June 2, 2008. The present case is but an example of the lengthy and protracted litigation between Medicare

5

Defendant's sovereign immunity argument relies *inter alia* on language found in the Supreme Court's opinion in *United States v. Louisiana,* 446 U.S. 253, 264-65 (1980) reh. den. 447 U.S. 930 (1980), wherein the Court stated: "Apart from constitutional requirements in the absence of a specific provision by contract or statute or 'express consent ... by Congress' interest does not run on a claim against the United States." The government's immunity from the award of interest

---

providers and the DHHS arising out of disputes over fees for services as determined by private insurance carriers responsible for administering the Medicare program.. *E.g. National Medical Enterprises v. Sullivan,* 960 F.2d 866 (9th Cir. 1992), involving a dispute over providers' cost reports submitted for the period 1980 through 1984; *Cosgrove v. Sullivan,* 999 F.2d 630 (2nd Cir. 1993), involving claims for services rendered between 1984 and 1986; and *Bertschland Family Practice Clinic v. Thompson*, 2002 WL 1364155 (S.D. Ind. June 4, 2002) involving claims for tests performed between April 1 and October 1, 1989.  The remarks of the members of the panel reflect a frustration not unlike that expressed by Judge Goettel in his published opinion in *Cosgrove v. Sullivan,* 783 F.Supp. 679 (S.D. N.Y. 1992) - subsequently reversed by the Second Circuit - over the lengthy delay in resolving the claims brought by Medicare beneficiaries (providers).  The panel also suggested that DHHS has been guilty in the past of repeatedly making misleading and incorrect statements of fact to both district and appellate judges.

Upon review of relevant portions of the record and in accordance with the provisions of the Omnibus Budget Reconciliation Act of 1986, P.L. 99-509, Blue Cross-Blue Shield of Texas was initially required to establish mileage components for reimbursement of travel expenses.  Of the Medicare providers in Texas only Daniel P. Campbell on behalf of the Texas TCL's disputed the miles per hour component of the travel allowance.  *See* OAR at 706-07; 708-710; 723.  The Regional Director's letter of August 2, 1988, described the methods used in calculated reimbursable expenses.  This did not mollify Mr. Campbell as evidenced by the first lawsuit which he caused to be filed.  *See* note 3, *supra*.  On June 29, 1990, DHHS's associate regional administrator wrote Campbell with reference to the computation.  *Id.* at 568-69.  Following the second remand on December 16, 1994, Carol Aekel, a Senior Manager with Medicare Part B, sent information to ALJ Park with enclosures which included the June 29, 1990, letter.  *Id.* at 567.  Prior to his June 28, 1995, decision, Park also received a letter dated January 30, 1995, from Magda Flores, Appeals Coordinator for DHHS.  *Id.* at 757-58.  Operating on the representations from the carrier that the component was derived from the personal knowledge of its employees, *see e.g.* AR 52-53, DHHS repeatedly requested remands for an opportunity to marshall such evidence. Whether an employee of the carrier did in fact have personal knowledge and experience when the mileage component was implemented in 1987 cannot be determined after the extreme passage of time, but suffice it to say that when ALJ Moore requested DHHS to produce that on which it relied, all that it could do was produce Exhibit 78.  However, I cannot discern from the record that the DHHS's brief filed in No. 00-10099 or from the statements which its counsel apparently made to the members of the panel at oral argument, that the agency or its attorney was guilty of knowingly making false statements of fact.  *See also Texas Clinical Labs v. Shalala,* No. 3-96-CV-571-L, *supra,* Part III.D., AR at 174-175.

6

was reiterated in the Court's opinion in *Library of Congress v. Shaw,* 478 U.S. 310, 315-319 (1986). In that case notwithstanding the fact that Title VII of the Civil Rights Act contained a provision that the United States would be liable the same as a private party constituting a waiver of the government's immunity from attorney's fees, this waiver did not permit a finding of a concomitant waiver with respect to an award of interest.

In the present case Congress expressly provided for a limited waiver of sovereign immunity on claims for interest brought under 42 U.S.C. §1395*l*(j). <u>Accrual of interest on balance of excess or deficit not paid.</u> The statutory provision provides in pertinent part that:

> Whenever a final determination is made that the amount of payment made under this part either to a provider of services or to another person pursuant to an assignment under section 1395u(b)(3)(B)(ii) of this title was in excess of or less than the amount of payment that is due, and payment of such excess or deficit is not made (or effected by offset) within 30 days of the date of the determination, interest shall accrue on the balance of such excess or deficit not paid or offset (to the extent that the balance is owed by or owing to the provider) at a rate determined in accordance with the regulations of the Secretary of the Treasury applicable to charges for late payments.[6]

The Department of Health and Human Services promulgated a regulation in implementing this Congressional waiver of sovereign immunity as it related to the payment of interest on amounts in excess or underpaid with respect to a service provider. *See* 42 C.F.R. § 405.378 (formerly 42 C.F.R. § 405.376) (1995).

Plaintiffs submit that the decision of ALJ Galvin on January 31, 1992, constitutes a "final determination" for accrual of interest under §1395*l*(j). *See* § 405.378 at (c)(ii)(B), i.e. "For the purposes of this section ... the following constitutes a final determination: [ ] (B) A written

---

[6]*See also* 42 U.S.C. § 1395g(d) which contains identical language with regard to interest on underpayments or overpayments with respect to hospital insurance benefits for the aged and disabled.

determination of an underpayment."

On the other hand the Secretary argues that since this decision was subject to review and was in fact vacated and remanded, the ALJ's decision does not constitute a final decision of an underpayment which triggers the accrual of interest. More to the point Defendant argues that Plaintiffs' position is inconsistent with the narrow waiver of interest awards permitted under §1395*l*(j). In determining the extent of a limited waiver of sovereign immunity, in addition to the requirement that a waiver be strictly construed, the extent of the waiver must be construed in favor of immunity. *E.g. Library of Congress v. Shaw, supra,* 478 U.S. at 319; *see also McMahon v. United States*, 342 U.S. 25, 27 (1951).

To read the term "final determination" to include an ALJ's decision that an underpayment to a health care provider exists, when the decision remains open to administrative appeal, is contrary to the general requirement that administrative exhaustion be pursued before judicial review can be sought.

In the present case - as set out above - and as summarized in the MAC decision dated August 22, 2005, Background, AR at 004, the Appeals Council reviewed the January 31, 1992, decision and ordered the case remanded to the ALJ for further proceedings relating not only to the miles per hour component, but on another matter as well. Following remand the ALJ issued a decision in favor of Plaintiffs, but the Appeals Council again remanded the case followed by a decision rendered by a second ALJ. This decision was reviewed by the Appeals Council which ultimately upheld the carrier's computation of the 35 m.p.h. component. From this final decision the Plaintiffs filed the complaint for judicial review in this court which resulted in a judgment in the Secretary's favor which was affirmed in part and reversed in part by the Fifth Circuit. The case

was ultimately remanded to the Secretary and resulted in a decision on March 25, 2003, pursuant to which an ALJ found Plaintiffs to be entitled to additional payments plus accrued interest. Plaintiffs appealed the issue of accrued interest which the Appeals Council concluded was correctly computed.

This reiteration aptly demonstrates that the ALJ's January 31, 1992, decision cannot be reasonably construed as a "final decision" within the meaning of the "interest" statute or the corresponding regulation. The facts described in *Bertschland Family Practice v. Thompson,* 2002 WL 1364155 (S.D. Ind. June 4, 2002), are readily distinguishable and do not support Plaintiffs' argument. Of controlling significance in that case is the fact that neither party sought a review of the ALJ's decision that the Medicare provider was entitled to reimbursement due to an overpayment.[7] Although the court found that interest began to accrue on the "underpayment" to the Medicare provider on the date of the ALJ's decision, notwithstanding the absence of a sum certain and where calculation of the amount was referred to the carrier,[8] the court rejected the claimants "improbable theory ... that ... the period during which interest *accrued* began earlier when the *overpayment* first was assessed." The court also rejected the argument that a symmetry be read into the regulation which would trigger the accrual of interest on monies withheld due to an erroneous overpayment determination made by a carrier. The court cited the provisions of § 405.376 superseded by the present § 405.378, and case authority from the Second and Ninth

---

[7]An ALJ's previous decision had been vacated and remanded by the Medicare Appeals Council.

[8]Although the ALJ's decision in *Bertschland* did not calculate the amount of the "underpayment," it is similar to the ALJ's decision of March 23, 2003 (AR at 88), in the present case in that calculation of the interest owed was left to Blue Cross - Blue Shield and in that in neither case was an appeal sought from the ALJ's decision.

9

Circuits[9] and comments related to the Secretary's construction of the regulation in concluding that the Medicare provider sought "to read a symmetry into the regulation that simply is not there."

The absence of symmetry is irrelevant to the doctrine of sovereign immunity. The doctrine preceded the founding of the United States by hundreds of years and immunizes the government or a governmental entity from actions for which a private party would be subject to liability. Because any amounts owing would be paid out of public funds, suits for negligent torts committed by a public employee, for example, cannot be maintained against the United States unless the administrative steps enumerated in the Federal Tort Claims Act have been strictly complied with. Similarly because the government is not a private litigant, estoppel which could apply to a private party principal based on the conduct of its agent does not apply to a governmental agency, even though an agency employee may have provided incorrect information on which another relied. *Federal Crop Ins. Corp. v. Merrill,* 322 U.S. 380, 384 (1947); *see also Schweiker v. Hansen,* 450 U.s. 785, 788 (1981).

In the alternative, I find that the Secretary's interpretation of 42 U.S.C. § 1395*l* is entitled to deference under *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.,* 467 U.S. 837, 842-45 (1984). As noted above, where there has been a limited waiver of immunity, the extent of the waiver must be construed in favor of immunity. In adopting a regulation defining the term "final determination" it may be inferred that the Secretary concluded that the term as it appeared in the statute was ambiguous. In applying *Chevron* deference, the question for the court to address

---

[9]*National Medical Enterprises v. Sullivan,* 960 F.2d 866, 869 (9th Cir. 1990) (rejecting argument that erroneous "notice of program reimbursement" triggered interest obligation under 42 U.S.C. § 1395g(d) and 42 C.F.R. § 405.376(c)(l)(i) and *Cosgrove v. Sullivan,* 999 F.2d 630, 633 (2nd Cir. 1993) reversing 783 F.Supp. 769 (S.D. N.Y. 1992) and holding that judicial decisions are not "final determinations" under § 405.376.

is whether the agency's interpretation is based on a permissible construction of the statute. In the present case, the delegation of authority requirement addressed in *United States v. Mead Corp.,* 533 U.S. 218, 226-227 (2001) is satisfied and the Secretary's interpretation of § 1395*l* is reasonable. Plaintiffs cite no case authority which holds otherwise or which questions the Secretary's interpretation of the statute.

Moreover, the Appeals Council's decision applying 42 C.F.R. § 405.378(c)(ii)(B) to ALJ Galvin's decision of January 22, 1992, and concluding that it was not a "final determination" is entitled to even greater deference. AR at 13. *See Thomas Jefferson University v. Shalala,* 512 U.S. 504, 512 (1994) ("We must give substantial deference to an agency's interpretation of its own regulations."); *see also Barnhart v. Walton,* 535 U.S. 212, 217 (2002) ("Courts grant an agency's interpretation of its own regulations considerable legal leeway").

Therefore, the MAC's decision dated August 22, 2005, holding that the ALJ's decision of March 25, 2003, was the "final determination" for the purpose of calculating interest due must be sustained, and

IT IS ORDERED that the Secretary's motion for summary judgment is granted.

A copy of this memorandum opinion and order shall be transmitted to counsel for the parties.

SIGNED this 4th day of June, 2009.

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE