**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**TEXAS CLINICAL LABS, INC., et al.,**

      **Plaintiffs,**

**v.**                                     **Civil Action No. 3:06-CV-1861-L-BK**

**CHARLES E. JOHNSON,**

      **Defendant.**

## FINDING, CONCLUSION AND RECOMMENDATION

This cause is before the Court for a recommendation on Plaintiffs' *Renewed Motion and Application for Award of Attorneys' Fees and Costs* (Doc. 111), Plaintiffs' *Corrected Renewed Motion and Application for Award of Attorneys' Fees and Costs* (Doc. 112), and Plaintiffs' *Unopposed Motion to File a Reply Brief in Excess of Page Limitation* (Doc. 129). Having reviewed the pertinent filings and applicable law, the undersigned recommends that the district court **GRANT** Plaintiffs' *Renewed Motion and Application for Award of Attorneys' Fees and Costs* (Doc. 111) and Plaintiffs' *Corrected Renewed Motion and Application for Award of Attorneys' Fees and Costs* (Doc. 112), to the extent set forth herein.

## BACKGROUND

*1.*     *Administrative Proceedings from 1986 Through 1996*

Plaintiffs seek attorneys' fees arising out a dispute between them and the Department of Health and Human Services ("DHHS") in relation to a Medicare reimbursement issue. The dispute began around 1986 when DHHS implemented a new formula for calculating

reimbursement for certain health care providers' travel expenses.[1] The Plaintiff laboratories

objected to this change and sought administrative review to challenge two elements of DHHS's

travel allowance formula:  (1) the 35 mile per hour average speed used as the standard speed for

delivery of services and (2) the median cost per specimen.  In January 1992, an administrative

law judge ("ALJ") found that neither figure was supported by the record, but the Appeals

Council vacated the ALJ's ruling and remanded so that DHHS could present evidence in support

of the 35 m.p.h. figure and median cost per specimen.

Upon remand, the ALJ again ruled in favor of the Plaintiff laboratories, finding that

DHHS had failed to produce evidence to support its use of either the 35 m.p.h. figure or the

median cost per specimen.  The Appeals Council, however, reversed again finding that sufficient

evidence did exist to support both figures and remanded the matter to a different ALJ.  In June

1995, the successor ALJ rendered a third ruling in favor of the Plaintiff laboratories.  Again, the

Appeals Council reversed, finding that DHHS had  presented sufficient evidence to support its

figures.

2.      *District Court Proceedings Commenced in 1996*

In 1996, Plaintiffs appealed to the district court, seeking judicial review of the Appeals

Council's ruling. (Case No. 3:96-CV-571-L at Doc. 1).  The district court granted summary

judgment to DHHS and dismissed Plaintiffs' claims.  In December 2000, the Court of Appeals

for the Fifth Circuit affirmed the district court's dismissal of Plaintiffs' median cost per specimen

claim.  However, the appeals court remanded the 35 m.p.h. claim because the record did not

---

[1] Unless otherwise indicated, the background section of this recommendation is drawn from the facts set forth in the Fifth Circuit Court of Appeals' most recent opinion in this case. (Doc. 119).

include any objective evidence to support DHHS's use of the 35 m.p.h. figure, but DHHS represented that it did have such evidence. In March 2001, the district court, in turn, remanded the case back to the administrative level and directed that (1) the record be supplemented with the documentation on which DHHS relied in determining the 35 m.p.h. figure, and (2) DHHS provide a complete explanation for its decision to use the 35 m.p.h. figure. (Dist. Ct. Case No. 3:96-CV-571-L, Doc. 63).

       *3.       Administrative Proceedings on Remand*

After the administrative proceedings were re-opened, DHHS introduced into evidence an e-mail, in which it admitted for the first time that the 35 m.p.h. figure was not based on any objective evidence. Rather, the e-mail stated, the figure was based solely on the insurance carrier's staff's personal beliefs regarding travel time in Texas. In March 2003, the ALJ thus ruled in favor of Plaintiffs for the fourth time and awarded them $581,157.00 plus interest. DHHS did not appeal.

In December 2003, DHHS issued two checks to Plaintiffs which included interest dating only from the March 2003 date of the ALJ's fourth ruling.[2] Plaintiffs objected to DHHS's calculation of interest and requested that the ALJ supplementally rule that interest accrued as of January 1992, the date of the first of the four ALJ rulings in their favor. The ALJ held that he did not have the authority to rule on the issue, and while the Appeals Council subsequently ruled that the ALJ did have such authority, it concluded that no additional interest was owed to Plaintiffs.

---

[2] The Plaintiff corporations, which originally had been formed under Texas law, went out of business during the course of this litigation, and were re-formed under Colorado law merely to receive payment from DHHS. (Doc. 79 at 5).

### 4.     *Second District Court Appeal*

The Plaintiffs appealed to the district court for the District of Colorado in October 2005 to determine the proper amount of interest owed to them and to assert a due process claim against DHHS for its misrepresentations about the 35 m.p.h. supporting figures.  (Doc. 79 at 6).  The Colorado court transferred the case to this court, and DHHS challenged Plaintiffs' standing.  (*Id.* at 7).  In September 2008, the Fifth Circuit resolved the standing dispute in Plaintiffs' favor. The court also noted DHHS's insistence that (1) Plaintiffs' claim for additional interest was "separate and distinct from their Medicare reimbursement claim," and (2) the interest claim did not accrue until December 2003 when DHHS issued payment for the Medicare reimbursement judgment. (*Id.* at 12).  The Fifth Circuit ruled that these arguments "widely misse[d] the mark" because it is "pellucid that entitlement to interest is part and parcel of the underlying debt or liability."  (*Id.*).

 The Court concluded by noting that this matter had spanned nearly 20 years because of "DHHS's repeated misrepresentations that there was evidence supporting its methodology for calculating travel allowances," and warned the government against "needlessly perpetuating this dispute" which already had been prolonged by its "unwarranted actions."  (*Id.* at 14).

Following the Fifth Circuit's remand to the district court for further proceedings on whether Plaintiffs were entitled to interest accruing from the date of the first ALJ's January 1992 decision, both parties filed summary judgment motions.  (Docs. 81, 95).  At the same time Plaintiffs filed their motion for summary judgment, they also moved for attorneys' fees and costs, seeking an award dating from the commencement of the administrative claim 17 years previously through the upcoming final decision.  (Doc. 86 at 14).  The district court denied the attorneys' fee motion as premature.  (Doc. 106).  Several months later, the district court granted summary

judgment for DHHS, finding that Plaintiffs were not entitled to additional interest. (Doc. 108; Doc. 119 at 3).

     *5.*     *Motion for Attorneys' Fees and Costs*

After entry of judgment in June 2009, and contemporaneously with their filing of a notice of appeal to the Fifth Circuit, Plaintiffs renewed their prior motion for attorneys' fees and costs. (Doc. 111). In particular, Plaintiffs sought a prevailing party award of fees and costs under the Equal Access to Justice Act ("EAJA") for the entirety of the litigation, stemming from approximately 1988 through the present or, in the alternative, an interim award related to the ALJ's fourth ruling in their favor in March 2003. (*Id.* at 1-2). Specifically, Plaintiffs sought attorneys' fees of $562,592.25 and costs of $24,012.17.[3] (*Id.* at 2). In the alternative, Plaintiffs sought a fee award as a sanction based on the government's misconduct during the litigation. (*Id.*).

Given the pending appeal, the district court ruled that DHHS did not have to respond to Plaintiffs' attorneys' fee motion until 20 days after the appellate judgment became final. (Doc. 116). In July 2010, the Fifth Circuit affirmed the district court's grant of summary judgment on the interest issue in DHHS's favor. (Doc. 119). DHHS now has filed an opposition in response to Plaintiffs' request for attorneys' fees and costs, and Plaintiffs have replied. (Doc. 124; Doc. 130).

---

[3] Plaintiffs subsequently revised their request downward by $12,927.00 in attorneys' fees, so they are now seeking a total of $549,665.25. (Doc. 112 at 2).

1.     *Whether Plaintiffs are Prevailing Parties*

Plaintiffs first contend that they are prevailing parties within the meaning of the EAJA because they convinced three ALJs and the Fifth Circuit that no evidence existed to support DHHS's use of the 35 m.p.h. formula, DHHS ultimately admitted this, and paid Plaintiffs substantial damages.  (Doc. 86 at 14-15; Doc. 130 at 3-4).

DHHS responds that the Plaintiff laboratories are not prevailing parties for purposes of the instant case because Plaintiffs are seeking fees for work that was actually performed for the underlying 35 m.p.h. issue on which they prevailed ("TCL I"), rather than the instant case ("TCL II").  DHHS notes that, despite the close relationship between the cases, TCL II was filed in a different district court, rather than in the TCL I case, and is limited to the amount of interest owed to Plaintiffs.  (Doc. 124 at 9-11).  DHHS points out that the district court and the Fifth Circuit ruled against the Plaintiffs on the TCL II interest claim raised in the instant federal complaint, and Plaintiffs are thus seeking fees through TCL II, in which they did not prevail, for work they successfully performed in TCL I.  (*Id.* at 11).

Pursuant to the EAJA, a prevailing party in any action brought against the United States may be awarded a judgment for costs.  28 U.S.C. § 2412(a)(1).  The EAJA also provides for a permissive award of attorneys' fees to the "prevailing party" in an action, and states that where fees are awarded under this section, the United States "shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law."  28 U.S.C. §

2412(b).  To qualify as a prevailing party, the plaintiffs must "succeed on *any* significant issue in litigation which achieves *some of the benefit* the parties sought in bringing suit."  *Sims v. Apfel*, 238 F.3d 597, 600 (5th Cir. 2001) (emphasis added).

In this case, the Fifth Circuit already has rejected DHHS's argument that TCL I and TCL II raised "separate and distinct" claims.  In particular, DHHS argued before the Fifth Circuit that the Plaintiff Texas corporations had dissolved before their claim for interest arose, and that Plaintiffs' later claim for additional interest did not accrue until after December 2003.  (U.S.C.A. Case. No. 07-10760, Appellee's Brief at 12-13).  The Fifth Circuit ruled that the Plaintiffs had the capacity to pursue their claim for additional interest because it stemmed from the original Medicare reimbursement action they had initiated in July 1990.  (Doc. 79 at 11-12) ("It is pellucid that entitlement to interest is part and parcel of the underlying debt or liability.").

Given the Fifth Circuit's consideration of this point, it is apparent that the two TCL cases are, in fact, the same case for purposes of the EAJA.  Further, Plaintiffs are the prevailing party in this case as to the 35 m.p.h. issue in that (1) their position as to that issue was sustained by two ALJs and ultimately by the Fifth Circuit in December 2000; (2) DHHS eventually admitted that the Plaintiffs' position was accurate and that DHHS had misrepresented the facts for years; and (3) DHHS has paid substantial damages to Plaintiffs as a result.  They thus succeeded on a significant issue in the litigation by achieving at least some of the benefit that they sought when they brought the suit.  *Sims*, 238 F.3d at 600.

2.     *Whether Plaintiffs' EAJA Application is Timely*

DHHS next argues that Plaintiffs' request for attorneys' fees and costs is untimely because the 2001 district court remand for the receipt of further evidence was pursuant to

sentence four of 42 U.S.C. § 405(g). (Doc. 124 at 13-15). Thus, DHHS maintains, Plaintiffs had 30 days from the date of the district court's 2001 remand order to seek attorneys' fees, and although no final judgment was separately entered, the court's order acted as a judgment because of its brevity. (*Id.* at 16-17).

Plaintiffs maintain that the district court's 2001 remand order was pursuant to sentence six of 42 U.S.C. § 405(g) because the order required DHHS to provide new or additional evidence and did not make a substantive ruling with respect to DHHS's position. Thus, Plaintiffs urge, the remand order did not constitute a final judgment under sentence four that triggered the clock on their motion for attorneys' fees. (Doc. 130 at 5-6).

There are only two types of remands provided under section 405(g) – a sentence four remand and a sentence six remand. *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Sentence four provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." This provision gives the district court the authority to remand a case if it determines that DHHS incorrectly applied the law or made improper findings of fact. *Murkeldove v. Astrue*, 635 F.3d 784, 793 (5th Cir. 2011) (citing with approval *Jackson v. Chater*, 99 F.3d 1086 (11th Cir. 1996), for the proposition that a sentence four remand requires that the district court find that either the Commissioner's decision is not supported by substantial evidence or the Commissioner incorrectly applied the law).

A sentence six remand may be ordered only in two situations: (1) where the Commissioner requests a remand before answering the complaint, or (2) where new, material evidence is to be adduced. *Shalala v. Schaefer*, 509 U.S. 292, 297, n.2 (1993); *see also*

*O'Connor v. Shalala*, 23 F.3d 1232, 1233 (7th Cir. 1994). The district court that issues a sentence six remand does not rule in any way as to the correctness of the administrative decision, but merely remands because new evidence has come to light that might affect the outcome of the proceedings. *Melkonyan*, 501 U.S. at 98.

The district court's March 2001 remand was made pursuant to sentence six so that new, material evidence could be introduced in the form of documentary evidence in support of the 35 m.p.h. figure and the DHHS's provision of a complete explanation for its decision to use the 35 m.p.h. figure. *Id.*; (Dist. Ct. Case No. 3:96-CV-571-L, Doc. 63). Sentence four clearly had no applicability to the district court's remand where the court made no determination that DHHS incorrectly applied the law or made improper findings of fact and, indeed, did not reverse DHHS's decision. *Murkeldove*, 635 F.3d at 793.

The EAJA requires that a party seeking an award of attorneys' fees and expenses file its fee application within 30 days of final judgment. 28 U.S.C. § 2412(d)(1)(B). In sentence six cases, the filing period for an EAJA application does not begin until after the post-remand proceedings are completed, the DHHS returns to the district court, the court enters a final judgment, and the appeal period runs. *Melkonyan*, 501 U.S. at 102. In this case, the post-remand proceedings were complete after the Appeals Council ruled adversely to Plaintiffs on the interest issue, Plaintiffs then appealed (Doc. 1), final judgment was entered in June 2009, (Doc. 109), and Plaintiffs filed their renewed EAJA application that same month, (Doc. 111). Thus, their EAJA motion is timely.

*3.     Whether DHHS's Position was Substantially Justified*

Plaintiffs contend that DHHS's position in the underlying litigation was not substantially justified because DHHS repeatedly failed to present evidence that it misrepresented it had to validate the 35 m.p.h. formula. (Doc. 86 at 17-18).  Further, Plaintiffs maintain, there was a lack of justification to continue the litigation following Plaintiffs' appeal to the Fifth Circuit to consider Plaintiff's jurisdiction to challenge the proper accrual of interest, considering that the Fifth Circuit found Defendant's arguments "widely missed the mark."  (*Id.* at 18).

DHHS responds that its position was substantially justified in that its 35 m.p.h. formula was based on relevant factors, namely the carrier Blue Cross/Blue Shield's knowledge of Texas. (Doc. 124 at 19-20).  Plaintiff replies that DHHS's position was not substantially justified because, after ten years, it finally admitted that it never had an objective basis to support the formula.  (Doc. 130 at 8-9).  As for the so-called "relevant factors" DHHS relies on, Plaintiff contends that the Fifth Circuit deemed them insufficient, directly resulting in the remand for additional evidence.  (*Id.*).

Once a plaintiff establishes that it is a prevailing party under the EAJA, the government must pay attorneys' fees unless it can prove that its position was substantially justified, both in litigation and in the underlying administrative proceedings.  28 U.S.C. § 2412(d)(1)(A); *Baker v. Bowen*, 839 F.2d 1075, 1080 (5th Cir. 1998).  The position of the United States is "substantially justified" when the government had a "reasonable basis both in law and fact" such as could satisfy a reasonable person.  *Pierce v. Underwood*, 487 U.S. 552, 565, 566 n.2 (1988).

Where a party prevails upon judicial review of an adversary adjudication after having engaged in "lengthy administrative proceedings before final vindication of his or her rights in the

courts, the government should have to make a strong showing to demonstrate that its action was reasonable." *S & H Riggers & Erectors, Inc. v. Occ. Safety & Health Rev. Comm'n*, 672 F.2d 426, 430 (5th Cir. 1982). As a general proposition, if a case lacks substantial evidence and does not turn on mere evidentiary ambiguities or involve novel legal principles, "the absence of support for the [government's] decision . . . is at once an absence of justification for [its] position." *Baker*, 839 F.2d at 1081. Nevertheless, the standard should not be read to raise a presumption that the government's position was not substantially justified merely because the government ultimately lost its case. *Dole v. Phoenix Roofing, Inc.*, 922 F.2d 1202, 1209 (5th Cir. 1991).

Here, the Fifth Circuit already has spoken harshly about DHHS's conduct in this case. In its 2008 opinion, the court stated that DHHS had repeatedly misrepresented that it had objective evidence to support its 35 m.p.h. figure and had "needlessly perpetuated this dispute" with its "unwarranted actions." (Doc. 79 at 14); (see also *Transcript of Oral Argument* from U.S.C.A. Case No. 07-10760, Doc. 85-3 at 17-18, 28 (Chief Judge Jones stating that the government had caused this "terrible situation," had lied in its 2000 appellate briefs about having objective evidence to support the 35 m.p.h. figure, and had lied repeatedly to several courts and ALJs about having such evidence)). Clearly, the government has not made a strong showing that its factual position was "substantially justified" because it did not have a reasonable basis in fact to argue that it had objective evidence to support the 35 m.p.h. figure. *Pierce*, 487 U.S. at 565& 566 n.2; *S & H Riggers*, 672 F.2d at 430. While the government repeatedly represented that it had such evidence, it finally admitted on remand that no such evidence had ever existed. (Doc. 79 at 5). In fact, during oral argument before the Fifth Circuit in 2008, the government essentially

conceded that it had made false representations about the existence of such evidence.  (Doc. 85-3 at 17-18).  Given the above, DHHS's position in the underlying litigation and administrative proceedings was not substantially justified.  *Baker*, 839 F.2d at 1080.

4.     <em>Whether DHHS Acted in Bad Faith</em>

Next, Plaintiffs urge that DHHS acted in bad faith, which warrants payment of their attorneys' fees at market rate, rather than at the capped rate of $125 available under section 2412(d)(2)(A) of the EAJA.  (Doc. 86 at 18).  They argue that DHHS's bad faith is evident in its continual lies to the ALJs, district court judge, and the Fifth Circuit when (1) it repeatedly represented that it had objective evidence to support its 35 m.p.h. component; and (2) forced Plaintiffs to litigate a standing issue for three years in an attempt to avoid addressing the relevant issues on the merits.  (*Id.* at 19-21).

DHHS maintains that Plaintiffs cannot point to anywhere in the record where it represented that it had objective evidence to support the challenged m.p.h. component.  (Doc. 124 at 22).  Further, DHHS urges, this Court found in 1999 and 2009 that the administrative record did not support Plaintiffs' assertions that DHHS acted in bad faith.  (*Id.*).

Section 2412(b) of the EAJA authorizes an award of attorneys' fees at market rates against a losing party who has acted in bad faith, vexatiously, wantonly or for oppressive reasons.  *Perales v. Casillas*, 950 F.2d 1066, 1071 (5th Cir. 1992).  Thus, where there is a showing of bad faith, the $125 hourly attorney fee cap set forth under section 2412(d)(2)(A) does not apply. *Mendenhall v. Nat'l Trans. Safety Bd.*, 92 F.3d 871, 876 (9th Cir. 1996).

As an initial matter, DHHS's argument that it never represented that it had objective evidence to support the challenged m.p.h. component is foreclosed by the Fifth Circuit's 2008

opinion, in which the court expressly noted that it previously had remanded the case based on DHHS's representations that it had objective evidence to support its formula. (Doc. 79 at 5); *see also Texas Clinical Labs, Inc. v. Apfel*, 2000 WL 34507667 *1 (5th Cir. 2000) (holding that based on the representations in briefing, "the Secretary relied on documents [to support the 35 m.p.h. figure] which were not made a part of the record" and remanding for DHHS to include those records and a complete explanation for its decision).

DHHS's argument that this Court found in 1999 and 2009 that the administrative record did not support a bad faith finding is similarly without merit. The district judge's finding in 1999 (1) was on a completely unrelated point (namely the Appeals Council's remand to a different ALJ), (2) was issued years before DHHS admitted that it had no evidence to support the 35 m.p.h. formula, and (3) is utterly irrelevant to the issue at hand. *Texas Clinical Labs, Inc. v. Shalala*, 1999 WL 1243200 *9 (N.D. Tex. 1999). Judge Sanderson's 2009 summary judgment opinion speaks more directly to the issue at bar, insofar as he stated that he could not discern whether DHHS's 2000 appellate brief or oral arguments contained knowingly false statements. Nevertheless, Judge Sanderson did not have the benefit of the fully developed record on the attorneys' fee issue that is before the undersigned, and his footnoted remarks are *dicta* in any event. *Texas Clinical Labs, Inc. v. Shalala*, 2009 WL 1574465 at n.5 (N.D. Tex. 2009).

Although no case is directly on point, the case at bar is similar to *Baker v. Bowen*. 839 F.2d at 1081-82. There, the Fifth Circuit held that the government had acted in bad faith when DHHS and the Appeals Council deliberately concealed the fact that the recording of the Social Security claimant's hearing before the ALJ had been lost, and the Appeals Council affirmed the ALJ's decision anyway. *Id.* The government attempted to conceal the error even after the case

had been appealed to the district court and requested repeated extensions to "develop the record," knowing that the tape could not be found, thereby creating unnecessary delay and increasing the claimant's litigation costs. *Id.* at 1082. The Fifth Circuit held that the Appeals Council had failed to fulfill its statutory duty to base its decision on evidence adduced at the hearing and remanded for an award of attorneys' fees at market rate based on the government's bad faith. *Id.*

Similarly, here, the record suggests that DHHS knew it had no evidence to support its 35 m.p.h. formula, but nonetheless represented that it did, thereby creating unnecessary delay for many years and exorbitantly increasing Plaintiffs' litigation costs. Several times, ALJs found in Plaintiffs' favor, yet the Appeals Council reversed their decisions despite the lack of objective evidence. *Baker*, 839 F.2d at 1081-82. Similar to *Baker*, DHHS requested remands to "develop the record" with non-existent evidence, and eventually admitted -- only after extraordinary delay -- that there was no such evidence. *Id.* at 1082. This supports a finding that DHHS acted during the litigation in bad faith. *Perales*, 950 F.2d at 1071. Accordingly, an award of attorneys' fees at a reasonable market rate in Plaintiffs' favor is warranted. 28 U.S.C. § 2412(b).

5.      *Whether Plaintiffs are entitled to EAJA Fees for the Administrative Proceedings*

DHHS argues that Plaintiffs are not entitled to an award of attorneys' fees for the pre-1996 period in which they were involved exclusively in administrative proceedings because EAJA fees are not permitted when the purpose of the administrative proceeding was to fix a travel reimbursement rate and when DHHS was not represented by counsel in the proceedings. (Doc. 124 at 23-24). Finally, DHHS concludes, because the litigation ended in a sentence four remand, and it was not a party to the post-remand proceedings, Plaintiffs are not entitled to fees and costs for those proceedings either. (*Id.* at 24).

Plaintiffs respond that the intent of the underlying administrative proceedings was to challenge an existing rate that already had been fixed by the carrier, not to fix an original rate. (Doc. 130 at 12). Further, Plaintiffs maintain, attorneys' fees for the administrative proceedings are warranted because the proceedings were adversarial in nature or, alternatively, inextricably intertwined with the resulting judicial proceedings. (Doc. 130 at 12-13).

Attorneys' fees under the EAJA are only allowed for adversarial administrative adjudications involving DHHS where DHHS is represented by an attorney. 45 C.F.R. §§ 13.1, 13.3(a); 5 U.S.C. § 504(b)(1)(C). For purposes of the EAJA, Social Security benefit proceedings are not "adversarial." *Sullivan v. Hudson*, 490 U.S. 877, 891-92 (1989). Further, the Secretary of DHHS is not a party to the administrative proceedings when a carrier makes an initial determination on a claim for reimbursement of benefits, and a claimant thereafter appeals through the administrative process. *See* 42 C.F.R. §§ 405.802, 405.803, 405.805, 405.807, 405.808, 405.822, 405.855. Thus, at first blush, Plaintiffs would appear to be foreclosed from recovering EAJA fees and costs for the administrative proceedings they undertook in this case prior to seeking district court review in 1996.

Nevertheless, the Supreme Court has construed the EAJA to permit fee awards for Social Security administrative proceedings that are "so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award." *Sullivan*, 490 U.S. at 892; *see also New York Gas Light Club, Inc. v. Carey*, 447 U.S. 54, 65-67, 71 (1980) (noting that, given the interlocking system of judicial and administrative avenues to relief, excluding preliminary state and local administrative proceedings from the fee-shifting provisions of Title VII of the Civil Rights Act would clash with Congress's intent in enacting the fee-shifting

provisions). Under the Supreme Court's test, the adversarial nature of the proceedings is irrelevant because the crucial issue is the nexus between the civil action and the administrative proceeding. 490 U.S. at 889. Further, where a court orders a remand to the Secretary in a Social Security case and retains continuing jurisdiction over the case pending a decision which will determine the claimant's entitlement to benefits, the proceedings on remand are an integral part of the "civil action" for judicial review; thus, EAJA attorney's fees for representation on remand are available as well. *Id.* at 892.

In *Sullivan*, the Court relied on two factors in assessing the relationship between the judicial and administrative proceedings. First, the Court considered whether the plaintiff could attain "prevailing party" status within the meaning of section 2412(d)(1)(A) only after the result of the administrative proceeding was known. *Id.* at 886. Second, the Court ruled that where final judgment in the civil action was wholly dependent upon the successful completion of the administrative proceedings, an EAJA award was warranted on the administrative proceedings. *Id.* at 887-88.

In the case at bar, the administrative proceedings were so tightly intertwined with the judicial proceedings that they should be considered part of the civil action for purposes of the EAJA fee award. *Sullivan*, 490 U.S. at 892. Plaintiffs could not have attained "prevailing party" status within the meaning of section 2412(d)(1)(A) until after the ALJ ruling in their favor. *Id.* at 886. Thus, the final judgment in the civil action was wholly dependent upon the successful completion of the administrative proceedings. Accordingly, an EAJA fee award is warranted on the administrative proceedings that occurred after suit was filed in the federal district court in December 1996 and continuing through June 2009. *Id.* at 887-88, 892.

Nevertheless, Plaintiffs are not entitled to EAJA fees for work done in the administrative proceedings that predated the filing of the first federal district court action in 1996. This case is clearly distinguishable from the "far from typical" *Pollgreen v. Morris* case that Plaintiffs cite. 911 F.2d 527, 535 (11th Cir. 1990) (noting that while the EAJA does not typically entitle a Social Security plaintiff to an award of fees for the initial administrative proceedings, such fees were justified in atypical case because plaintiffs only secured an appropriate administrative hearing upon obtaining a preliminary injunction in federal court, after which the district court retained jurisdiction). A review of the Jackson Walker invoices and Carla Cox's affidavit, which contains some inexact figures, reveals that from 1987 through November 1996, attorneys' fees in the amount of approximately $56,841.50 were charged to Plaintiffs. This amount has been deducted from the total fee amount recommended as set forth in the Conclusion section of this recommendation.

6.     *Whether Plaintiffs' Attorneys' Fees are Excessive*

DHHS maintains that a review of Plaintiffs' fee application reveals that most of their attorneys' billed time involves the attorneys talking to each other on the phone and, consequently, those hours should be reduced. Further, Plaintiffs' attorneys claim a substantial amount of time for researching how much interest the Plaintiffs should receive, which DHHS argues should also be excluded. Lastly, DHHS seeks to exclude the time Plaintiffs' attorneys spent talking with a law clerk regarding the Court's jurisdiction, as the Court concluded that it lacked jurisdiction shortly thereafter.[4]  (Doc. 124 at 24-25).

---

[4] Apparently, DHHS is referring to discussions Plaintiffs' attorneys had with the district court's law clerk following the filing of their *Motion to Reduce Award to Judgment* in October 2003. Case No. 3:96-CV-571-L at Doc. 64. Upon notification by the district judge that he

Plaintiffs contend that their attorneys' fees, which they seek to collect at the attorneys' market rates, are reasonable, and DHHS apparently concedes as much because it does not rebut their argument that the fee award is not subject to the cap set out in section 2412(d)(2)(A).[5] (Doc. 130 at 13-14).

An award of attorney's fees under the EAJA must be reasonable. *See* 28 U.S.C. § 2412(b). The most common starting point for assessing the amount of a reasonable fee is to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (considering fee award under Civil Rights Attorney's Fee Awards Act, 42 U.S.C. § 1988); *see also Perales*, 950 F.2d at 1073 (applying *Hensley* analysis to an EAJA case). This "lodestar" figure then may be adjusted "upward or downward depending upon the respective weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*"[6] *Matter of Fender*, 12 F.3d 480, 487 (5th Cir. 1994); *see also*

---

believed he had lost jurisdiction of the case upon remand to the Secretary and asking for further briefing on the issue, (*id.* at Doc. 66), the parties entered into a *Stipulated Motion to Dismiss Pending Motion to Reduce Award to Judgment*, (*id.* at Doc. 67), which the district court granted, (*id.* at Doc. 68).

[5] Because Plaintiffs' attorneys, Campbell Killin Brittan & Ray, LLC, do not have billing records prior to 1997, they only seek attorneys' fees and costs incurred from January 1997 through June 2009. (Doc. 112 at 1-2). Plaintiffs' other firm, Jackson Walker, has presented records that pre-date January 1997. (See Doc. 112-7 at 13-30).

[6] The *Johnson* factors consist of: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), *overruled on other*

*Hall v. Shalala*, 50 F.3d 367, 369 (5th Cir. 1995) (noting that the *Johnson* factors are relevant to calculating an attorneys' fee award under the EAJA).

After calculation of the lodestar, the district court should exclude hours that were not reasonably expended, for example, if the case was overstaffed or the hours were redundant or unnecessary. *Hensley*, 461 U.S. at 433. Further, "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved,'" and no fee is justified for services rendered on such a claim. *Id.* at 435. As the fee applicants, Plaintiffs have the burden of demonstrating the reasonableness of the number of hours expended on the prevailing claim. *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990) (noting that the burden "does not shift to the opposing party merely because that party does not show that the hours are unreasonable or that it did not make specific objections to the hours claimed").

As an initial matter, the government does not challenge Plaintiffs' attorneys' or paralegals' hourly rates as unreasonable. Further, Plaintiffs' counsel have submitted affidavits attesting to the reasonableness of the fees in relation to those charged by other firms of similar size in their respective regions. (Doc. 111-3 at 5-6; Doc. 111-4 at 2). Thus, the Court independently finds that such rates are reasonable. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (noting that reasonable rates are determined by reference to "those prevailing in the community for lawyers of reasonably comparable skill, experience and reputation.").

As for DHHS's argument that most of Plaintiffs' attorneys' billed time involves them talking to each other on the phone, the Court's review of the billing records from 1997 forward

_____

*grounds by Blanchard v. Bergeson*, 489 U.S. 871 (1989)).

reflects that much of the telephone time involved Plaintiffs' attorneys speaking to either the government's or the carrier's attorneys or to the court. (*See, e.g.*, Doc. 112-3 at 1-9, 11-12, 14-18, 21-27; Doc. 112-4 at 28-31, 34-35, 38-52, 55-59; Doc. 112-5 at 59-89; Doc. 112-6 at 91-98, 102, 105; Doc. 112-10 at 26; Doc. 112-13 at 4; Doc. 112-14 at 26; Doc. 112-15 at 21). Further, Plaintiffs' attorneys' telephone conversations among themselves appear to have been strategy sessions, collaborative work on legal memoranda, or discussions regarding settlement proposals from DHHS. (*See, e.g*, Doc. 112-3 at 10-12, 16-26; Doc. 112-10 at 26, 29; Doc. 112-11 at 2, 6, 10, 16, 28, 31; Doc. 112-12 at 3, 6, 15, 19, 23; Doc. 112-13 at 4, 8, 12, 16, 20; Doc. 112-13 at 28; Doc. 112-14 at 4, 8, 12, 16, 24, 26, 30; Doc. 112-15 at 7, 16, 18, 21). DHHS has cited no authority for the proposition that such time in telephone conferences is not compensable, nor does it appear from the Court's review to be excessive. Accordingly, the undersigned finds that all such time is reasonable and compensable.

Next, the government argues that time (1) Plaintiffs' attorneys spent researching how much interest Plaintiffs should receive and (2) talking with a law clerk regarding the court's jurisdiction should be excluded, presumably because Plaintiffs ultimately did not prevail on those issues. As noted above, no attorneys' fee is justified for services rendered on unsuccessful claims. *Hensley*, 461 U.S. at 435.

Although the government failed to provide any citations to the record where the Plaintiffs' unsuccessful issues were researched and litigated, the Court has undertaken such review. The record reveals that Plaintiffs' attorneys spent a total of $57,648.25 on the interest

issue.[7]  (Doc. 112-3 at 27-30; Doc. 112-4 at 1-4, 6-10, 22; Doc. 112-5 at 27; Doc. 112-6 at 3-9, 11-16; Doc. 112-11 at 19, 31; Doc. 112-13 at 32; Doc. 112-14 at 8, 12, 16, 20).  Plaintiffs' attorneys also spent a total of $1,671.00 on the jurisdiction issue.[8]  (Doc. 112-3 at 29-30; Doc. 112-4 at 1).  With the exception of these hours, the Court finds that the hours Plaintiffs' attorneys otherwise expended in this litigation are reasonable, and the government does not challenge them.  The parties also do not suggest that the *Johnson* factors warrant a departure from the lodestar, thus, those factors will thus not be separately addressed here.  *See Hall*, 50 F.3d at 369.  In sum, the Court recommends that an additional $59,319.25 be deducted from Plaintiffs' final fee award.

7.    *Whether the Court Should Award Plaintiffs Attorneys' Fees and Sanctions Pursuant to Its Inherent Discretion*

Plaintiffs urge the court to sanction DHHS, under its inherent authority, by awarding fees and costs due to DHHS's bad faith conduct, as well as additional sanctions for the government's failure to properly pay Plaintiffs from the inception of this case.  (Doc. 86 at 21-22; Doc. 130 at

---

[7] In relation to the firm of the firm of Campbell Killin Brittan & Ray, LLC, this is based on (1) 3.15 hours at $255 an hour, 11.05 hours at $275 an hour, .55 hours at $285 an hour, 13.65 hours at $295 an hour, and 17.15 hours at $305 an hour, billed by William Brittan; (2) 58.85 hours at $185 an hour, 34.35 hours at $260 an hour, and 45.3 hours at $280 an hour, billed by Elizabeth Volz; and (3) 5.05 hours at $350 an hour, billed by Richard Campbell.  These figures total $50,226.00. The remainder of the $57,648.25 figure spent on the interest issue is based on work done by the firm of Jackson Walker, LLP as follows:  (1) 2.3 hours at $310 an hour, 9 hours at $325 an hour, and .55 hours at $355 an hour, billed by Carla Cox; (2) 9.8 hours at $135 an hour, billed by J. Rogers; (3) 1.5 hours at $80 an hour and 12.1 hours at $100 an hour, billed by J. Wells, and (4) 7.8 hours at $120 an hour, billed by K. Elam for a total of $7,422.25. Additionally, some billable hour notations for each firm included multiple projects that did not all relate to the interest issue.  In those instances, and in the absence of any other evidence as to how the time was spent, the Court simply cut the hours billed in half.

[8] This is based on (1) 3.5 hours billed at $265 an hour by William Brittan; (2) 2.1 hours billed at $185 an hour by Elizabeth Volz; and (3) 1 hour billed at $355 by Carla Cox.

14-15).  Further, Plaintiffs argue that they should be awarded sanctions in the form of additional interest on the amount of the Medicare underpayment from 1987 through 1992.  (Doc. 86 at 22-23).  DHHS responds that sovereign immunity bars sanctions.  (Doc. 90 at 5).

Given that the Court has found that Plaintiffs are entitled to an award of their attorneys' fees at the requested market rate based on the Government's bad faith, the Court will deny as moot Plaintiffs' request insofar as they seek attorneys' fees as a sanction for the period from December 1996 to June 2009.  To the extent that Plaintiffs seek additional sanctions for the government's failure to properly pay Plaintiffs from the inception of this case in approximately 1987 up until December 1996, the Court does have the inherent authority to sanction litigants, including by assessing fees against counsel, if the litigant has acted in bad faith by, for example, delaying or disrupting the litigation.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).

Although DHHS cites to cases that stand for the proposition that the Court lacks inherent authority to sanction it, those cases are unpersuasive.  First, the court in *John Doe #1 v. Veneman*, 380 F.3d 807, 821 (5th Cir. 2004), merely states summarily that "unless the government has expressly waived its immunity, sovereign immunity bars sanctions."  For that proposition, the Fifth Circuit relied on *United States v. Idaho ex rel. Director, Idaho Dept. of Water Resources*, 508 U.S. 1, 8 (1993).  However, the Supreme Court in *Idaho ex rel. Director* did not speak to the issue of sanctions against the government.  Rather, it held that the McCarran Amendment, which submitted the United States to state water rights adjudication, but which provided that "no judgment for costs" shall be entered against United States, did not waive sovereign immunity with respect to payment of a filing fee under Idaho water rights legislation.  Further, the *Veneman* case has never been relied upon for that particular proposition since, and it

conflicts with both earlier and later Fifth Circuit case law.

For instance, in *Bradley v. United States*, 866 F.2d 120, 126-28 (5th Cir. 1989), the Fifth Circuit held that the district court should not have left "unsanctioned" the government's conduct of introducing late expert witnesses who prejudiced the case. The appeals court thus instructed the district court on remand to use its inherent authority to enforce its rules, including the possibility of requiring the government to reimburse opposing counsel for the expenses caused by the government's conduct. *Id.*; *see also United States v. Ocean Bulk Ships, Inc.* 248 F.3d 331, 340 n.2 (5th Cir. 2001) (noting that the prior precedent rule requires that the holding of the first panel to address an issue is the law of the Circuit and thereby binding on all subsequent panels). Subsequent to the *Veneman* case, the Fifth Circuit has held that sovereign immunity did not bar the district court from assessing attorneys' fees against the FDIC, pursuant to the court's inherent authority, insofar as such fees were attributable to the costs of delay that the FDIC had caused. *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 595-96 (5th Cir. 2008) ("the question of the scope of a waiver of sovereign immunity falls away when a court acts under its sanctioning powers and does not abuse its discretion in doing so"). Accordingly, DHHS's arguments that sovereign immunity acts as a bar to prevent this Court from exercising its inherent sanctioning authority are baseless.

In this case, the Court already has found that the government acted in bad faith. Thus, the Court finds that Plaintiffs are entitled, as a sanction against DHHS, to an award of their attorneys' fees from 1987 to December 1996. Based on the record evidence, this amount totals $56,841.50, which is sought solely by the Jackson Walker law firm.[9] (Doc. 111-3 at 3-5; Doc.

---

[9] Where Plaintiffs' attorney Carla Cox provided a range of figures in her estimate of time spent and billable rate charge, the Court utilized the middle of the range in making the calculation. (Doc. 111-3 at 3-5).

112-7 at 14, 16, 18, 20, 22, 24, 26, 28, 30; Doc. 112-8 at 2, 4, 6, 8, 10, 12, 14, 16, 20, 22, 24, 26, 28, 31; Doc. 112-9 at 2, 5, 7, 11, 14, 16, 19, 21, 23, 27, 29, 31; Doc. 112-10 at 2, 4, 6, 10, 14, 16, 18, 20, 22, 24).  However, these billing statements provide no description whatsoever of the work done for much of this time period.  (Doc. 112-7 at 14-30; Doc. 112-8 at 2-26).  The Court thus finds that Plaintiffs have not met their burden to show that the hours billed relate to the matters at hand.  *Von Clark*, 916 F.2d at 259 (noting that the burden "does not shift to the opposing party merely because that party does not show that the hours are unreasonable or that it did not make specific objections to the hours claimed").  As a result, the amount of $27,482.50, which reflects the amount billed without description, will be deducted, leaving a balance of $29,359.00. Further, in the absence of any other evidence in the record establishing otherwise, the Court has estimated that half of the work performed by Plaintiffs' attorneys during this timeframe was for the median cost per specimen claim, which Plaintiffs eventually lost, while half was for the successful 35 m.p.h. claim.  Accordingly, the Court recommends awarding half of the final balance of $23,990.00 as a sanction against DHHS, which amounts to $14,679.50.

To the extent that Plaintiffs request further sanctions in the form of additional interest on the amount of the Medicare underpayment from 1987 through 1992, they are not entitled to such. Plaintiffs made this argument prior to losing on the interest issue, noting that the interest they were seeking in the district court proceedings would compensate them only for the time value of the money lost from 1992 to the present. (Doc. 86 at 22).  Having since lost on that issue in the district court and on appeal, it would not be in the interest of justice to award Plaintiffs interest for the earlier time period as a sanction.

**CONCLUSION**

Based on the foregoing, the undersigned **RECOMMENDS** that the district court

**GRANT IN PART** Plaintiffs' *Renewed Motion and Application for Award of Attorneys' Fees and Costs* (Doc. 111), Plaintiffs' *Corrected Renewed Motion and Application for Award of Attorneys' Fees and Costs* (Doc. 112) as follows:

**GRANT** costs in the total amount of $24,012.77, which is uncontested by DHHS.

**GRANT** attorneys' fees in the amount of $433,504.50. This figure represents the total fee award sought by Plaintiffs ($549,665.25), less the fees Plaintiffs' attorneys charged for the interest and jurisdiction issues on which they lost ($59,319.25), less the fees that Plaintiffs' attorneys charged for the administrative proceedings that preceded the commencement of the first federal district court action in December 1996 ($56,841.50).

**GRANT** sanctions in Plaintiffs' favor in the amount of $14,679.50 worth of attorneys' fees.

**SO RECOMMENDED** on May 25, 2011.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE