IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TEXAS CLINICAL LABS, INC.,** | § | |
| **TEXAS CLINICAL LABS-GULF** | § | |
| **DIVISION, INC., ESTATE OF DANIEL** | § | |
| **P. CAMPBELL, TEXAS CLINICAL** | § | |
| **LABS, LLC, and TEXAS CLINICAL** | § | |
| **LABS-GULF DIVISION, LLC**, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-1861-L** |
| | § | |
| **CHARLES E. JOHNSON,** Acting Secretary, | § | |
| of Health and Human Services, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Plaintiffs' Renewed Motion & Application for Award of Attorney's Fees & Costs, filed June 18, 2009; and (2) Plaintiffs' Motion to Correct Renewed Motion & Application for Award of Attorney's Fees & Costs, filed June 23, 2009. The motions were referred to United States Magistrate Judge Renee Harris Toliver on December 6, 2010, for hearing and determination. The magistrate judge entered her Findings, Conclusion and Recommendation ("Report") with respect to the motions on May 25, 2011. Defendant Secretary of the United States Department of Health and Human Services (the "government" or "DHHS") filed objections to the Report on June 8, 2011. Plaintiffs Texas Clinical Laboratories, Inc., *et al.* (collectively "TCL" or "Plaintiffs") also filed objections to the Report on June 8, 2011.

After careful review of the motions, Report, objections, responses, appendices, record, and applicable law, the court **accepts** the findings and conclusions of the magistrate judge, except that

it slightly **modifies** the sanction award; **overrules** Defendant's Objections to the Finding, Conclusion and Recommendation of the Magistrate Judge; **overrules** Plaintiffs' Objections to the Magistrate's Findings, Conclusion and Recommendation Awarding Plaintiffs' Attorney's Fees and Costs; and **grants in part** and **denies in part** Plaintiffs' Renewed Motion & Application for Award of Attorney's Fees & Costs (doc. #111) and Plaintiffs' Motion to Correct Renewed Motion & Application for Award of Attorney's Fees & Costs (doc. #112) as herein set forth.

## I.     Background

This matter arises out of torturous litigation that has consumed the better part of the past two decades. The parties' dispute originated in 1986 when DHHS implemented a new formula for calculating and reimbursing the travel expenses of certain healthcare providers. TCL challenged two elements of the formula and sought administrative review over: (1) the 35 mile per hour average speed used as the standard of speed for delivery of services, and (2) the median cost per specimen. In January 1992, the administrative law judge ("ALJ") determined that neither figure was supported by the record. The Appeals Council, however, vacated the ALJ's ruling and remanded to allow the government an opportunity to present evidence in support of the figures.

On remand, the ALJ ruled in favor of Plaintiffs for the second time and determined that DHHS failed to produce evidence to support the 35 mile per hour speed or the median cost per specimen. The Appeals Council again reversed and remanded the matter to a different ALJ. In June 1995, the new ALJ rendered another ruling, the third, in Plaintiffs' favor. The Appeals Council once again reversed and held that the government had presented sufficient evidence to support its figures.

In 1996, Plaintiffs appealed to this court and sought judicial review of the Appeals Council's ruling. The court granted summary judgment in favor of the government and dismissed TCL's

claims; in December 2000, the Fifth Circuit Court of Appeals affirmed the dismissal as to the median cost per specimen claim only. With respect to the 35 mile per hour claim, the Fifth Circuit remanded because the record contained no objective evidence to support the 35 mile per hour figure. DHHS, however, represented that it had such evidence. In March 2001, this court remanded the case back to the administrative level and directed DHHS to properly supplement the record with documentation demonstrating its basis for the 35 mile per hour figure and its justification for using the 35 mile per hour figure.

At the remanded administrative proceeding, DHHS introduced into evidence for the first time an admission that the 35 mile per hour figure was not based on any objective evidence and was based solely on the personal beliefs of the insurance carrier's staff about travel time in Texas. As a result, the ALJ ruled in Plaintiffs' favor for the fourth time in March 2003 and awarded TCL $581,157 plus interest. The government did not appeal. In December 2003, DHHS issued two checks to Plaintiffs that included interest dating only from the March 2003 date of the ALJ's fourth ruling. Plaintiffs objected to the government's calculation of interest and requested the ALJ to make a supplemental ruling that the interest accrued as of January 1992, the date of the ALJ's first ruling. The ALJ determined that he did not have the authority to rule on that issue, and Plaintiffs appealed. The Appeals Council subsequently held that the ALJ *did* have such authority but ultimately concluded that no additional interest was owed to TCL.

Plaintiffs then appealed to the federal district court for the District of Colorado in October 2005 to determine the proper amount of interest owed and to assert a due process claim against the government for its misrepresentations about the 35 mile per hour supporting figures. The Colorado court transferred the case to this court, and DHHS challenged Plaintiffs' standing. In September 2008, the Fifth Circuit ultimately resolved the standing dispute in Plaintiff's favor and rejected the

government's arguments that Plaintiffs' claim for additional interest was separate from Plaintiffs' underlying Medicare reimbursement claim. *See Texas Clinical Labs, Inc. v. Leavitt*, 535 F.3d 397, 405-06 (5th Cir. 2008) ("The DHHS's proposition widely misses the mark. It is pellucid that entitlement to interest is part and parcel of the underlying debt or liability . . . .").

On remand to the district court, both parties moved for summary judgment, and the court finally granted summary judgment for the government; the court determined that Plaintiffs were not entitled to any additional interest. The Fifth Circuit subsequently affirmed. Plaintiffs now seek a prevailing party award of fees and costs under the Equal Access to Justice Act ("EAJA") for the entirety of the litigation, stemming from approximately 1988 through the present or, in the alternative, an interim award related to the fourth ruling in their favor by the administrative law judge in March 2003. Specifically, TCL seeks attorney's fees of $549,665.25 and costs of $24,012.17. Alternatively, TCL seeks a fee award as a sanction based on the government's misconduct during the litigation.

In her Report, the magistrate judge recommends that Plaintiffs' motions for attorney's fees be granted to the following extent. Specifically, she determined that TCL was entitled to costs in the amount of $24,012.77 and attorney's fees in the amount of $433,504.50. She further determined that sanctions should be awarded in Plaintiffs' favor in the amount of $14,679.50 as attorney's fees. The government objects to the Report in its entirety and contends that TCL is entitled to no attorney's fees or sanctions. Plaintiffs object in part to the Report because they believe that they are entitled to an additional $56,841.50 in sanctions and/or attorney's fees incurred between 1988 and December 1996, as well as an additional $59,319.25 for time reasonably spent on interest and jurisdictional issues which were part and parcel to their claim.

## II.    The Parties' Objections

Both sides have multiple objections to the Report.  The court will address the objections of each side separately.

### A.    Objections by the Government

DHHS lodges six objections to the Report and specifically objects to the magistrate judge's conclusions that: (1) Plaintiffs are the "prevailing parties" for purposes of awarding fees; (2) Plaintiffs' EAJA application was timely filed; (3) DHHS was not "substantially justified" in its position; (4) DHHS acted in bad faith; (5) Plaintiffs are entitled to EAJA fees for the administrative process following the 2001 remand; and (6) the court should, as a sanction based on its inherent discretion, award Plaintiffs attorney's fees for the first administrative process.

#### 1.    "Prevailing Party"

First, the government objects to the magistrate judge's determination that Plaintiffs were the "prevailing parties" for the purpose of awarding costs and attorney's fees under the EAJA. Specifically, the government draws a distinction between the case concerning the underlying issue upon which Plaintiffs prevailed, concerning the 35 mile per hour figure ("TCL I"), and this case ("TCL II"), which arose out of Plaintiffs' claim for additional interest allegedly owed to them from the prior TCL I proceeding.

Pursuant to the EAJA, a "prevailing party" in any action brought against the United States may be awarded a judgment for costs, in addition to a permissive award of attorney's fees.  28 U.S.C. § 2412(a)(1) & (b).  To qualify as a "prevailing party," the plaintiffs must "succeed on *any* significant issue in litigation [that] achieves *some of the benefit* the parties sought in bringing suit." *Sims v. Apfel*, 238 F.3d 597, 600 (5th Cir. 2001) (emphasis added).  The government argues that Plaintiffs cannot rightly be considered a "prevailing party" in *this* action, TCL II, because they were

denied all relief on their claim for additional interest. Although DHHS admits Plaintiffs were a "prevailing party" on the 35 mile per hour figure in TCL I, the government asserts Plaintiffs' status in that case does not carry over to this case, TCL II, because both actions involved two separate complaints, each seeking different relief.

Specifically, the government attempts to support its position that TCL I and TCL II are not "the same case" for EAJA purposes on two grounds. First, DHHS argues that the Fifth Circuit's prior determination in this case that "entitlement to interest is part and parcel of the underlying debt or liability" is limited only to the issue of standing. Def.'s Objs. at 3. The court disagrees. Although the Fifth Circuit ultimately resolved a standing issue in Plaintiffs' favor in TCL II, the Fifth Circuit made no indication that its determination that TCL I and TCL II were essentially "the same case" was limited to standing. *See Texas Clinical Labs*, 535 F.3d at 405-06 ("The DHHS's proposition widely misses the mark. . . . We hold that the Texas TCLs' claim for additional interest was established on the date their Medicare reimbursement claim arose."). The court's plain reading of the Fifth Circuit opinion cannot lead to a clearer result: TCL I and TCL II are, in fact, "the same case" for the purposes of the EAJA because Plaintiffs' claim for additional interest (TCL II) was established on the date their claim for Medicare reimbursement arose (TCL I), upon which they were indisputably a "prevailing party" under the EAJA with respect to the 35 mile per hour figure.

Second, the government premises its entire argument that TCL I and TCL II are not "the same case" for EAJA purposes upon the notion that the district court's 2001 remand order was entered pursuant to sentence four of 42 U.S.C. § 405(g), which "requires plaintiffs . . . to seek attorney's fees at the remand, despite the possibility of additional administrative proceedings that could again end up in district court." Def.'s Objs. at 3 (citing *Shalala v. Schaefer*, 509 U.S. 292, 297, 300-01 (1993)). DHHS contends that, because the remand was issued pursuant to sentence

four, as opposed to sentence six, Plaintiffs' EAJA application was untimely, and Plaintiffs thus had

no entitlement as a "prevailing party." For the reasons discussed below, however, the court agrees

with the magistrate judge in that the remand was made pursuant to sentence six, not sentence four,

and Plaintiffs are therefore rightly considered as a "prevailing party" under the EAJA. The

government's first objection is overruled.

### 2.     Timeliness of the EAJA Application

Second, the government objects to the magistrate judge's determination that Plaintiffs' EAJA

application was timely filed. As discussed briefly above, the government's argument relies

exclusively on the nature of the 2001 remand ordered by the district court. The EAJA requires a

party seeking an award of attorney's fees and expenses to file its fee application within 30 days of

a final judgment. 28 U.S.C. § 2412(d)(1)(B). If the remand order had been issued under sentence

four, DHHS argues that it would have constituted a final judgment from which Plaintiffs had thirty

days to file their EAJA application. *See* 42 U.S.C. § 405(g) ("The court shall have power to enter

. . . a *judgment* . . . with or without remanding the cause for a rehearing.") (emphasis added).

In "sentence six" cases, however, the filing period for an EAJA application does not begin

until after the post-remand proceedings are completed, the case returns to the district court, the court

enters a final judgment, and the appeal period runs. *Melkonyan v. Sullivan*, 501 U.S. 89, 101-02

(1991). "Sentence six" remands may be ordered in only two situations: (1) when the government

requests a remand before answering the complaint, or (2) when new, material evidence is to be

adduced. *Schaefer*, 509 U.S. at 297 n.2. In this case, it is uncontroverted that the reason for the

court's 2001 remand order fell under the second category. *See Texas Clinical Labs, Inc. v. Apfel*,

No. 00-10099, 2000 WL 34507667, *1 (5th Cir. Dec. 22, 2000) ("Because the record does not

provide a basis for [DHHS's] use of the 35 mile per hour figure, we remand this case . . . to give it

an opportunity to include in the administrative record those documents it relied upon to support that decision and to provide a complete explanation for this decision."); *Texas Clinical Labs, Inc. v. Thompson*, No. 3:96-CV-0571-L (doc. #63) (N.D. Tex. Mar. 28, 2001) ("[DHHS] is directed to include in the administrative record those documents it relied upon to support its use of the 35 mile per hour average used as the standard speed for delivery of services."). The district court that issues a "sentence six" remand does not rule in any way as to the correctness of the administrative decision but merely remands because new evidence has come to light that might affect the outcome of the proceedings. *Melkonyan*, 501 U.S. at 98.

The government contends that, because the Fifth Circuit made a substantive ruling with respect to the claim concerning the median cost per specimen figure – despite its simultaneous order of remand, without reaching the merits, of the claim concerning the 35 mile per hour figure – the remand was ordered pursuant to sentence four. The court rejects this argument. The record is well-established that both of Plaintiffs' original points of contention, involving the median cost per specimen and the 35 mile per hour figure, constituted separate and distinct claims. Although this court and the Fifth Circuit were satisfied that the government had properly supported its median cost per specimen figure, that determination had no bearing on a substantive ruling regarding the 35 mile per hour figure, which was the claim upon which Plaintiffs ultimately prevailed in TCL I. Sentence four clearly had no applicability to the district court's remand when the court made no determination that the administrative process incorrectly applied the law or made improper findings, and did not reverse the resulting administrative judgment. *Murkeldove v. Astrue*, 635 F.3d 784, 793 (5th Cir. 2011). That the court initially granted summary judgment in DHHS's favor on the 35 mile per hour claim is of no moment in light of the Fifth Circuit's subsequent instruction to adduce new evidence into the record.

Finally, the government takes the unsupported position that a "sentence six" remand contemplates a remand *only* when the evidence is "new," meaning that it was not in existence during the administrative process. When this matter was pending before the Fifth Circuit, that court understood, from the government's briefing, that DHHS relied upon certain documents to support the 35 mile per hour figure that were not made part of the record. *Texas Clinical Labs*, 2000 WL 34507667, at *1 ("From the briefs, it appears that [DHHS] relied on documents which were not made a part of the record to support this figure."). Upon the subsequent remand to the administrative level, it was revealed that DHHS had no objective evidence to support its prior representation to the Fifth Circuit. This court is persuaded by Plaintiffs' argument that it is preposterous for the government, on the one hand, to represent at the appellate level that it had additional evidence upon which to base the 35 mile per hour figure and preclude Plaintiffs from relief, and then, on the other hand, to now contend that no "new" evidence actually existed in an effort to preclude an award under the EAJA. These different characterizations are inherently inconsistent with the government's position. The court concludes that the 2001 remand order was issued pursuant to sentence six of 42 U.S.C. § 405(g). The court accordingly entered a final judgment in this case in June 2009. Because Plaintiffs filed their renewed EAJA application that same June, within thirty days of the court's judgment, such application was timely filed. The government's second objection is overruled.

### 3.       "Substantially Justified"

Third, the government objects to the magistrate judge's determination that DHHS was not "substantially justified" in its position to preclude it from having to pay attorney's fees to TCL. Once a plaintiff establishes that it is a "prevailing party" under the EAJA, the government must pay attorney's fees unless it can prove that its position was "substantially justified," both in litigation

and in the underlying administrative proceedings. 28 U.S.C. § 2412(d)(1)(A); *Baker v. Bowen*, 839 F.2d 1075, 1080 (5th Cir. 1998). The government's position is "substantially justified" when it has a "reasonable basis both in law and fact" such as could satisfy a reasonable person. *Pierce v. Underwood*, 487 U.S. 552, 565, 566 n.2 (1988). Although the government concedes that Plaintiffs' account of DHHS's misconduct is "superficially compelling," especially in light of the lengthy administrative process in this case and chastising dicta from the Fifth Circuit critical of the government's conduct, DHHS contends that the magistrate judge failed to "look beneath the surface" and determine whether there was any factual support for such allegations. Def.'s Objs. at 11.

Specifically, the government contends that its position has been consistent throughout the entirety of this litigation, from the administrative level to the Fifth Circuit. It is undisputed that the Fifth Circuit did not mince words with regard to the government's conduct in this case. *See Texas Clinical Labs*, 535 F.3d at 407 ("[T]his matter has needlessly spanned close to twenty years because of the DHHS's repeated misrepresentations that there was evidence supporting its methodology for calculating travel allowances . . . ."); *id.* ("[T]his dispute . . . has already been prolonged by the government's unwarranted actions . . . ."). The government nevertheless contends that such dicta from the Fifth Circuit related only to TCL's due process claims against DHHS that were then-pending and ultimately dismissed as time-barred. Although the court agrees that the due process claims were properly dismissed as time-barred, simply mounting a successful defense on procedural grounds does not miraculously absolve the government of all prior misconduct and somehow render its position "substantially justified."

Over the course of this extensive litigation, which has now consumed more than twenty years, the record has had ample opportunity for development. From that record, the Fifth Circuit

formed certain opinions and conclusions about the nature and extent of the government's conduct. From the court's own review of that record, it has little reason to reach a different result. Although the government contends now for the first time that its position has been consistent throughout this entire litigation, it would be fatuous for this court to assign any credibility to that argument in light of the developed record and the negative impressions left by the government on three different ALJs and the Fifth Circuit. Whatever presumption of good faith that the government contends it is entitled to has been sufficiently rebutted by the record and the evidence.

With respect to the infamous 57 carrier surveys upon which the government, in its brief to the Fifth Circuit, purported to rely but never produced, Plaintiffs direct the court to numerous instances in the history of this case where the government was specifically asked for these surveys, was provided generous opportunities to supply them, and suggested that it used, possessed, and relied upon such surveys in support of the 35 mile per hour figure. *See, e.g.*, June 29, 1990 Letter from Associate Regional Administrator for DHHS to Owner of TCL, O.A.R. 568-69 ("[A] survey of 57 Medicare carriers showed that only two used an average driving speed of less than 35 MPH in their calculations. The other 55 carriers use average driving speeds of 35-45 MPH. For these reasons, we believe the 35 MPH average driving speed used by the carrier was both realistic and appropriate."). Additionally, dating as early as 1988 via a request for production by TCL and as early as 1992 via a request for evidence by the ALJ, the government was asked for such surveys, but they were never submitted. *See* O.A.R. 281, 480-82. DHHS nevertheless argues that the record was "bereft of any specific request" for the surveys until the case reached the Fifth Circuit in 2000. Def.'s Objs. 19. The government further attempts to explain away its failure to include the surveys into the record by citing the significant passage of time from the inception of this case, the large size of a government agency like DHHS, and its contention that the surveys were never used in the

creation of the 35 mile per hour formula. The government's arguments leave the court with the distinct impression that DHHS is "grasping at straws"; in particular, the court finds that the latter argument, "the surveys were never used in the creation of the 35 mph formula," is wholly inconsistent with the original administrative record.

It is undisputed that on remand to the administrative level in 2001, the government for the first time produced a document, e-mail correspondence, in which it admitted that the 35 mile per hour figure was based solely on subjective belief and was wholly lacking in objective evidence to support the figure. *Texas Clinical Labs*, 535 F.3d at 401-02. DHHS objects to the magistrate judge's reliance on this e-mail, the 57 missing carrier surveys, the "admissions" of government counsel during oral argument before the Fifth Circuit, and the language from the Fifth Circuit's 2008 opinion critical of the government's actions, as evidence of the government's misconduct throughout this litigation. Specifically, the government argues that it was error for the magistrate judge to consider any of those items in reaching her determination that DHHS's conduct was not "substantially justified." The court disagrees.

Perhaps any one of these items considered in isolation from the others would be insufficient to form the magistrate judge's determination, but, when considering all of them together and factoring in the extent of this litigation that has been drawn out over two decades, in part, by the government's squabbling over tangential issues, such as standing, and avoidance of the underlying claim relating to objective support for the 35 mile per hour figure, the court believes that the magistrate judge was completely justified in reaching the conclusion she did. The original administrative record and the thoughts of the Fifth Circuit on the matter speak for themselves. The court agrees with the magistrate judge in that the government was not "substantially justified" in its

position throughout the course of the entirety of this litigation and the underlying administrative proceedings. The government's third objection is overruled.

### 4. Bad Faith

Fourth, the government objects to the magistrate judge's determination that DHHS acted in bad faith. Section 2412(b) of the EAJA authorizes an award of attorney's fees at market rates against a losing party who acted in bad faith, vexatiously, wantonly or for oppressive reasons. *Perales v. Casillas*, 950 F.2d 1066, 1071 (5th Cir. 1992). The government argues that there is no evidence that it conducted itself with bad faith throughout this litigation because the magistrate judge improperly determined that DHHS needed "objective evidence" to support the 35 mile per hour figure. The court determines that whether the government "needed" to produce objective evidence in support of its figure widely misses the mark.

From the court's point of view, the primary reason that this litigation has persisted for so long is precisely because the government suggested or represented at every stage that it relied upon *objective* evidence – specifically, 57 carrier surveys – that were never made part of the record. Despite being afforded multiple opportunities to supply the record over the course of two decades with such evidence, the government ultimately admitted that it had no such evidence to produce. Now, the government's latest argument, that its basis for the 35 mile per hour figure was not required to be objective, completely glosses over DHHS's prior actions in this case that incurred the ire of the Fifth Circuit in its 2008 opinion. This is an argument that should have been advanced at the original administrative proceeding before the first ALJ, and, if objective evidence truly was not necessary, there would have been no need for the government to even suggest that it possessed or relied upon other documents such as the 57 carrier surveys in support of the 35 mile per hour figure.

The court views such an argument, at this juncture, as irrelevant to justifying DHHS's conduct over the past twenty years.

In light of the court's analysis and determination above in connection with its conclusion that the government was not "substantially justified" in its position to needlessly prolong this litigation, the court can reach no result here other than the government acted in bad faith. The court believes that an exchange between Chief Judge Edith H. Jones and government counsel at oral argument succinctly captures the essence and extent of the government's bad faith during this litigation:

> Chief Judge Jones: And so the Government is screwing these people around on interest when there would have been no interest had they acknowledged the facts back in 1990 or '88?
>
> Mr. Laurence: Yes, Your Honor. But interest is not punitive damages. That's what they're —
>
> Chief Judge Jones: Interest is for the detention of money, and you detained their money for 20 years.
>
> . . .
>
> Chief Judge Jones: And the Government lied to several courts – the two administrative law judges and, evidently, lied to this Court.

Pls.' App. (doc. # 85-3) 18 [18:7-16], 28 [28:11-13]. The court accordingly agrees with the magistrate judge's determination that the government acted in bad faith, and the government's fourth objection is overruled.

### 5. Entitlement to EAJA Fees for Post-Remand Administrative Process

Fifth, the government objects to the magistrate judge's determination that Plaintiffs are entitled to EAJA fees for the administrative process following the 2001 remand. The EAJA permits fee awards for government administrative proceedings that are "so intimately connected with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award."

*Sullivan v. Hudson*, 490 U.S. 877, 892 (1989). The government has not objected, and cannot reasonably object, to the magistrate judge's determination that the post-remand administrative proceedings fall within this category. Instead, the government's entire objection is premised on its characterization of the 2001 remand as a "sentence four" remand, previously discussed herein by the court.

The government argues that, because the remand occurred pursuant to sentence four of 42 U.S.C. § 405(g), a final judgment was entered in 2001 and Plaintiffs' EAJA application was untimely. Because the court has expressly rejected the government's arguments on this matter and has previously concluded that the magistrate judge was correct in determining that the 2001 remand was properly characterized a "sentence six" remand, the government's argument is foreclosed. The court agrees with the magistrate judge that the 2001 remand was a "sentence six" remand, and the government's argument has no bearing on TCL's entitlement to EAJA fees for the post-remand administrative process. Because the court determines that there is sufficient basis to conclude that the government engaged in bad faith, thereby allowing fees at a market rate under 28 U.S.C. § 2412(b), the court likewise rejects the government's contention that the fee award recommended by the magistrate judge is excessive. The government's fifth objection is overruled.

### 6. Sanction

Finally, the government objects to the magistrate judge's determination that, pursuant to the court's inherent authority, a sanction in the amount of attorney's fees arising from the first administrative proceeding from 1987 to 1996 is warranted. Specifically, the government contests the magistrate judge's recommendation because it believes that the magistrate judge reached her determination based on the erroneous conclusion that DHHS engaged in misconduct throughout this litigation. The court disagrees. In light of the court's above analysis and the extensive record in this

case, the court concludes that it was reasonable for the magistrate judge to determine that Plaintiffs are entitled to an amount of attorney's fees as sanctions against the government. The court has already determined that the government's position was not "substantially justified" and that it acted in bad faith. Pursuant to the court's inherent authority, the court agrees with the magistrate judge that a sanction of attorney's fees is reasonable and appropriate in this case. The government's sixth objection is overruled.

### B.    Objections by TCL

TCL makes three objections to the Report, specifically objecting to the magistrate judge's conclusions that: (1) Plaintiffs are not entitled to their fees and costs from 1988 through December 1996 under the EAJA; (2) Plaintiffs are limited to $14,679.50 as sanctions for their fees and costs from 1987 through December 1996; and (3) the $59,319.25 Plaintiffs spent in unsuccessfully litigating issues relating to additional interest and the court's jurisdiction were properly excluded from the EAJA award.

### 1.    Entitlement to EAJA Fees from 1988 Through December 1996

First, Plaintiffs object to the magistrate judge's determination that Plaintiffs were not entitled to an EAJA award for its costs and fees incurred during the administrative process from 1988 through December 1996. The magistrate judge determined that an EAJA fee award was warranted only for the administrative proceedings that occurred *after* suit was first filed in the district court in December 1996. Any administrative proceeding that predated the first filing in federal court accordingly falls outside the scope of the EAJA, and the parties do not dispute this.

Plaintiffs nevertheless contend that the magistrate judge may have overlooked their 1989 filing in federal court prior to their seeking administrative review. *See generally Colorado Clinical Labs, Inc. v. Newman*, No. 3:89-CV-1834-D, 1990 WL 282590 (N.D. Tex. May 24, 1990). Because

Plaintiffs first sought judicial review from the federal district court in 1989, they contend that they are entitled under the EAJA to all of their costs and fees that predated December 1996. Specifically, Plaintiffs attempt to analogize their situation to an Eleventh Circuit case in which the court allowed the plaintiff to recover its expenses incurred during the administrative proceeding that predated federal district court review. *See* Pls.' Objs. 4-5 (discussing *Pollgreen v. Morris*, 911 F.2d 527 (11th Cir. 1990)). The magistrate judge, however, drew a stark contrast between the two cases in her Report, and the court agrees with her conclusion for the reasons discussed below.

*Pollgreen* was a case that involved a group of plaintiffs – Key West fishermen – who, via fishing boats, attempted to transport Cuban refugees seeking political sanctuary to Florida. 911 F.2d at 530. Once the Key West fishermen arrived at Cuba, they were forced by armed soldiers of the Cuban government to take on board scores of other Cuban nationals whose entry into the United States was illegal. *Id.* When the plaintiffs returned to the United States, the government seized their fishing boats and served them with a Notice of Intention to Fine for violating the Immigration and Nationality Act. *Id.* The plaintiffs subsequently demanded the return of their vessels or that they be permitted to avail themselves of administrative mechanisms to allow them to reclaim their improperly seized vehicles. *Id.* The government denied both requests. *Id.* The plaintiffs then sought judicial review from the federal district court, and the court found that the government's failure to provide the plaintiffs with a prompt post-seizure hearing had unconstitutionally deprived them of due process. *Id.* The court issued a temporary restraining order as to the use of the fishing boats, and the plaintiffs were then allowed to pursue administrative remedies. *Id.* "Only after the plaintiffs sought recourse in the federal district court were they able to pursue meaningfully their administrative remedies." *Id.* at 535.

Here, Plaintiffs contend that their situation is identical to the Key West fishermen's situation in *Pollgreen*. With respect to Plaintiffs' 1989 federal court filing in *Colorado Clinical Labs*, Plaintiffs argue that they were "forced" to seek judicial review in the district court because they did not believe they could pursue an adequate or meaningful administrative remedy, and they understood that an appeal of their issue did not exist within the administrative process. Pls.' Objs. 4-5. Before the district court in 1989, they argued that the outcome of their administrative claims was preordained. *Colorado Clinical Labs*, 1990 WL 282590, at \*8. They also argued that Congress never intended to open administrative process to challenges relating to method of calculating benefits. *Id.* at \*6. Rejecting these arguments, the district court ultimately dismissed the action for Plaintiffs' failure to exhaust administrative remedies. *Id.* at \*8. Specifically, the court found that Plaintiffs had "not adequately demonstrated that pursuing the administrative process [would] be a useless exercise." *Id.*

This court agrees with the magistrate judge in that there is a stark contrast between *Pollgreen* and *Colorado Clinical Labs*. On the one hand, in *Pollgreen*, the court expressly held that the government had unconstitutionally deprived the Key West fishermen of due process by denying them access to an administrative remedy. In *Colorado Clinical Labs*, on the other hand, there was no such indication. There was no evidence to suggest that an administrative remedy was unavailable or that Plaintiffs were being deprived of due process. Instead, Plaintiffs were either unaware of the availability of administrative relief, or they were dissatisfied with the notion of having to seek such relief first. Accordingly, in *Colorado Clinical Labs*, the district court correctly held that Plaintiffs had not exhausted their administrative remedies, whereas in *Pollgreen*, the record was clear that the Key West fishermen were deprived of any administrative remedies to exhaust. Plaintiffs in this case, however, were deprived of nothing, and they were not "forced" to bring their claims to federal court.

The two cases are therefore not analogous, and the magistrate judge correctly determined that Plaintiffs are not entitled to EAJA fees for the administrative proceedings predating Plaintiff's December 1996 district court filing. Plaintiffs' first objection is overruled.

## 2. Reduced Attorney's Fees as Sanctions

Second, Plaintiffs object to the magistrate judge's determination that Plaintiffs are limited to $14,679.50 as sanctions for their fees and costs from 1987 through December 1996. Plaintiffs originally sought a sanction award of $56,841.50 for all of the legal work they obtained prior to their December 1996 filing in federal district court. The magistrate judge reduced this amount by approximately 75% because she determined that attorney's fees were not warranted for issues or claims upon which Plaintiffs did not ultimately prevail or for billed hours devoid of description of the work done.

Specifically, the magistrate judge excluded $27,482.50 from the total sought amount because it pertained to billing records that provided no description of the legal work done. The magistrate judge then excluded an additional $14,679.50 – or, half of the remaining $29,359 balance – because Plaintiffs ultimately prevailed only on the 35 mile per hour claim, and they lost on the median cost per specimen claim. Plaintiffs object that these amounts were improperly excluded by the magistrate judge because, first, the $27,482.50 billed without description was indisputably legal work rendered for Plaintiffs on their claims; there was no possibility of the billing records belonging to a separate client. Second, with respect to the additional $14,679.50 amount, Plaintiffs contend that the 35 mile per hour claim and the median cost per specimen claim were too inextricably intertwined for one to reasonably separate from the other. Thus, Plaintiffs contend that the full $56,841.50 amount should be awarded to them as sanctions. The court disagrees.

A district court should exclude hours that were not reasonably expended, for example, if the case was overstaffed or the hours were redundant or unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 433. Further, "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved,'" and no fee is justified for services rendered on such a claim. *Id.* at 435. Because the $27,482.50 amount lacks any description of the work performed, the magistrate judge was unable to reasonably determine whether such billed hours were "redundant" or "unnecessary." *See id.* at 433. Similarly, this court cannot make that determination. Litigants "take their chances" when they submit fee applications that are "not illuminating as to the subject matter" or "vague as to precisely what was done." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326-27 (5th Cir. 1995) (stating that such applications give "the district court sufficient leeway within which to *accept or reject* [the] fee."). Without being able to ascertain the nature of the legal work performed, the magistrate judge did not err when she reduced the amount sought by $27,482.50. *See id.*

With respect to the additional $14,679.50 reduced from the remaining balance, the court agrees that attorney's fees should not be awarded for legal services rendered on an unsuccessful claim. *See Hensley*, 461 U.S. at 435. It is undisputed that Plaintiffs ultimately did not prevail on their median cost per specimen claim and that part of the legal services rendered related to that claim. Because they ultimately *did* prevail on their 35 mile per hour claim, the magistrate judge reduced the remaining $29,359 balance by half. Plaintiffs argue that this was improper because they pursued a single claim for reimbursement premised on two "parallel theories" as to why DHHS's formula for reimbursement was defective.

Regardless of Plaintiffs' characterization of their claim for relief, the record makes clear that they challenged two separate parts of the government's reimbursement formula. It is difficult for

the court to conceive that these two claims, concerning the 35 mile per hour figure and median cost per specimen, constituted "two parallel theories" because they necessarily involved two different data sets. Nevertheless, the court has revisited TCL's billing records for the relevant time period, and determines that $9,746.50 appears to have been billed solely for work on the 35 mile per hour issue. With respect to the remaining $11,659 balance, the billing records make no distinction between the median specimen cost and 35 mile per hour claims. Although this is admittedly not an exact science, the court believes that splitting the remaining balance evenly, for lack of a better method, is reasonable under the circumstances. *See Kellstrom*, 50 F.3d at 326-27 (5th Cir. 1995) (stating that a district court has sufficient leeway to accept or reject a fee application when such application is "not illuminating as to the subject matter" or "vague as to precisely what was done"). The record makes no indication that one claim required substantially more work than the other, and to the extent that the 35 mile per hour claim did, the court has already set aside the $9,746.50 expended specifically on that claim.

Half of the remaining $11,659.00 balance is $5,829.50, which yields a total fee award of $15,576 as sanctions ($9,746.50 + $5,829.50). Because the computation of sanctions and the calculation of attorney's fees are so discretionary by nature, the court has no objective basis for altering the approach taken by the magistrate judge or what it determines to be a reasonable calculation supported by the recorded. Accordingly, the court determines that the magistrate judge properly determined that Plaintiffs are entitled to sanctions as attorney's fees and that it was reasonable for her to reduce the undefined or ambiguous billed amounts by half. Accordingly, the court slightly modifies the amount of sanctions and determines that Plaintiffs are entitled to sanctions in the amount of $15,576 for the legal services rendered prior to December 1996. Plaintiffs' second objection is overruled.

### 3.      Reduction of the EAJA Award for Unsuccessfully Litigated Issues

Finally, TCL objects to the magistrate judge's determination that Plaintiffs were not entitled to the $59,319.25 they incurred in legal fees for unsuccessfully litigating issues related to additional interest and the court's jurisdiction.  In determining the total amount of Plaintiffs' award under the EAJA, the magistrate judge excluded $59,319.25 from the amount sought because they were related to issues upon which Plaintiffs did not prevail.  *See Hensley*, 461 U.S. at 435.  In all other respects, the magistrate judge determined that Plaintiffs' legal expenses were reasonably incurred and unchallenged by the government.

Plaintiffs argue that their EAJA award should not be reduced by the $59,319.25 amount because the additional interest and jurisdiction issues were "based on the same set of underlying facts and legal theories" as their claim for relief, and they "were reasonably necessitated by the issues presented in the matter."  Pls.' Obj. 9.  Although the court agrees that Plaintiffs' claim for additional interest and the jurisdictional issue were substantially intertwined with TCL's underlying claim for relief insofar as the rationale or justification for litigating such issues, the type and amount of work that Plaintiffs expended on those unsuccessful issues were separate and distinct from the type and amount of work they performed on their underlying claim.  In other words, to litigate the additional interest and jurisdictional issues, the court determines that Plaintiffs expended additional hours of legal work that would have been unnecessary to advance their original, underlying claim for relief.  "[W]ork on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved,'" and no fee is justified for services rendered on such a claim. *Hensley*, 461 U.S. at 435 (citation omitted).  The court concludes that the magistrate judge properly excluded the $59,319.25 amount because it related to issues upon which Plaintiffs did not prevail in the litigation.  Plaintiffs' third objection is overruled.

## III. Conclusion

For the reasons stated herein, the court **accepts** the findings and recommendation of the magistrate judge, except that it slightly **modifies** the sanction award; **overrules** Defendant's Objections to the Finding, Conclusion and Recommendation of the Magistrate Judge; **overrules** Plaintiffs' Objections to the Magistrate's Findings, Conclusion and Recommendation Awarding Plaintiffs' Attorney's Fees and Costs; and **grants in part** and **denies in part** Plaintiffs' Renewed Motion & Application for Award of Attorney's Fees & Costs (doc. #111) and Plaintiffs' Motion to Correct Renewed Motion & Application for Award of Attorney's Fees & Costs (doc. #112) as follows:

The court **awards** costs to Plaintiffs in the amount of $24,012.77.

The court **awards** attorney's fees to Plaintiffs in the amount of $433,504.50.

The court **awards** attorney's fees to Plaintiffs as sanctions against the government in the amount of $15,576.

*This litigation suffers from a long and torturous history, and the court does not plan to expend any additional time or scarce judicial resources on this matter once this order is entered, unless ordered to do so by the Fifth Circuit. "The jig is up." The government has dug itself into a hole, and the only way out is to stop digging. The court hopes that common sense and reason prevail on the part of the government so that it can lift itself from this hole, stop wasting taxpayer money, and direct its energy toward more lofty pursuits. The government would do well to heed the words of Willie Nelson's classic Country Western song: "Turn Out the Lights, the Party's Over."*

**It is so ordered** this 29th day of July, 2011.

Sam A. Lindsay
United States District Judge